Todd A. Hammer
Marcel A. Quinn
Seth H. Rogers
HAMMER, QUINN & SHAW PLLC
100 Financial Drive, Suite 100
P.O. Box 7310
Kalispell, MT 59904-0310
Telephone: (406) 755-2225
Facsimile: (406) 755-5155
toddhammer@attorneysmontana.com
marcelquinn@attorneysmontana.com
sethrogers@attorneysmontana.com

*Attorneys for Defendant City of Kalispell*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| **FLATHEAD WARMING CENTER,**<br><br>Plaintiff,<br>v.<br><br>**CITY OF KALISPELL,**<br><br>Defendant. | Case No: 9:24-cv-00141-KLD<br><br>**CITY OF KALISPELL'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER** |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................ ii

FACTUAL BACKGROUND ........................................................................ 1

ARGUMENT ........................................................................ 5

I. Through the guise of a TRO, Plaintiff seeks a mandatory injunction which is improper and requires application of a heightened standard of proof ........................................................................ 6

II. Plaintiff cannot establish a likelihood of irreparable harm .......................... 7

III. Plaintiff is unlikely to succed on the merits ............................................ 10

A......... The WC lacks a protected property interest in the CUP as required for its procedural and substantive due process claims ....................... 11

B. Even if the Constitutional right to procedural due process was applicable, the WC was afforded due process .................................... 14

C. The WC's Equal Protection claim fails. The City Council had a rational basis for the difference in treatment ...................................... 20

D. Even if the Constitutional right to substantive due process was applicable, the City did not violate it ................................................ 21

IV. The balance of equities and public interest does not weigh in favor of an injunction ........................................................................ 24

CONCLUSION ........................................................................ 26

CERTIFICATE OF COMPLIANCE ........................................................................ 27

# TABLE OF AUTHORITIES

## Cases

*Akshar Glob. Invs. Corp. v. City of L.A.*, 817 F. App'x 301 (9th Cir. 2020)............21

*All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .................7, 10

*Arizona Dream Act Coal v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) .........................7

*Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) .......................................................................................................11

*Beasley v. Flathead Cty.*, 2009 MT 121, 350 Mont. 177, 206 P.3d 915 ........... 11-12

*Caribbean Marine Servs.Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)...........7

*City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 123 S. Ct. 1389, 155 L. Ed. 2d 349 (2003) ..................................................................22

*Cordova v. City of L.A.*, 2016 U.S. Dist. LEXIS 17943 .........................................15

*Ctr. for Food Safety v. Vilsack,* 636 F.3d 1166 (9th Cir. 2011) .................................6

*Dayalji v. City of Compton*, 1999 U.S. App. LEXIS 4083 (9th Cir. Mar. 11, 1999) ...................................................................................................................15

*Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 96 S. Ct. 2358, 49 L. Ed. 2d 132 (1976).........................................................................................................19

*Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985 (9th Cir. 2020) ...............................10

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ........................................ 6-7

*Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013 (9th Cir. 2011) ..................................11

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ..............................9

*In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007) ....................................7

*IRWS, LLC v. Elmore Cnty*., 2023 U.S. Dist. LEXIS 228741 (2023)... 10, 13, 14, 18

*Kerley Indus., Inc. v. Pima Cty.*, 785 F.2d 1444 (9th Cir. 1986) ................. 13-14, 18

*Killgore v. City of S. El Monte*, 860 F. App'x 521 (9th Cir. 2021) ........ 16, 20-21, 24

*Korean Am. Legal Advocacy Found. v. City of L.A.* , 23 Cal. App. 4th 376, 28 Cal. Rptr. 2d 530 (1994) .......................................................................... 13-14

*Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963 (9th Cir. 2010) ......... 14-15

*Legacy Invs., LLC v. Norfolk City Council*, 110 Va. Cir. 392 (Cir. Ct. 2022) .....9, 15

*Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ...........15

*Matsuda v. City & Cty. of Honolulu*, 512 F.3d 1148 (9th Cir. 2008) .......................22

*Native Ecosystems Council v. Marten,* 2018 U.S. Dist LEXIS 107446 .................24

*Nutrition Distribution, LLC v. Enhanced Athlete, Inc.*, 2017 U.S. Dist. LEXIS 18838 ..........................................................................................................8

*OAO Corp. v. United States*, 49 Fed. Cl. 478 (2001) ...............................................9

*Oneida Seven Generations Corp. v. City of Green Bay*, 2017 U.S. Dist. LEXIS 86509 .................................................................................... 18-19, 24

*Peak Oil Holdings LLC v. Cty. of Ventura*, 2023 U.S. Dist. LEXIS 222231 .... 22-23

*Powell Cty. v. Country Vill., LLC*, 2009 MT 294, 352 Mont. 291, 217 P.3d 508 ....11

*Saeed v. City of Fairfield*, 2023 U.S. Dist. LEXIS 9002 (E.D. Cal. Jan. 18, 23) .. 6-7

*Sampson v. Murray,* 415 U.S. 61, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974)................8

*Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008) ............................................ 21-23

*Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936 (9th Cir. 2004) .........................20

*Summers v. City of McCall*, 84 F. Supp. 3d 1126 (D. Idaho 2015) .........................18

*Stivers v. Pierce*, 71 F.3d 732 (9th Cir. 1995) ........................................................16

*Tok Air Serv., LLC v. Haaland*, 2021 U.S. Dist. LEXIS 142187 ...............................8

*Valhalla Custom Homes, Ltd. Liab. Co. v. City of Portland*, 2023 U.S. App. LEXIS 18753 (9th Cir. July 24, 2023) .......................................................................11

*Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013) ..........................................16

*Whitefish 57 Commer., LLC v. City of Whitefish*, 2023 MT 176, 413 Mont. 349, 536 P.3d 395.....................................................................................................11

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249, (2008)............................................................................................ 5-6, 8

*Wooten v. BNSF Ry. Co.*, 2017 U.S. Dist. LEXIS 40551 .....................................7, 8

**Statues**

Kalispell City Code 27.33.090 ............................................................... 12, 17

Kalispell City Code 27.36.020 ...................................................................12

Los Angeles Municipal Code § 12.24 ........................................................14

COMES NOW the City of Kalispell, through counsel of record, and submits the following opposition to Plaintiff's Motion for a Temporary Restraining Order.

The City requests the Court deny Plaintiff's Motion, as the Flathead Warming Center ("WC") failed to satisfy the required criteria for issuance of a restraining order.

**FACTUAL BACKGROUND**

Plaintiff's Application for the Conditional Use Permit was submitted with an express acknowledgment:

> Should any information or representation in connection with this application be incorrect or untrue, I understand any approval based thereon may be rescinded, and other appropriate action taken.

(Ex. 7, pg. 3.) Within the Application, WC provided representations on its future operations, including measures to be taken to mitigate the impact on the surrounding neighborhood. Among other things, WC emphasized it will take measures to be a "good neighbor," acknowledging: "It is my responsibility to ensure the shelter is a good neighbor." (*Id.* at 7-8.) In requesting approval, WC advised the Planning Board its operations do not contribute to trash / defecation in the neighborhood, cause increased crime, or create safety concerns with neighbors, among other things. (Ex. A.) In reliance on WC's information and representations, the City granted a CUP on November 2, 2020. (Ex. 14.)

After public concerns were raised regarding negative effects the WC was

having on neighboring residents and business owners, Council considered whether rescission was appropriate. (Ex. B.) On April 2, 2024, the City Manager provided WC courtesy notice of the public comment and the plan for work sessions on the issue (Ex. C.) Work sessions, attended by WC, occurred May 13 and May 28, 2024. (Ex. 41.) Among information considered by Council was police data showing a substantial increase in crime in the neighborhood surrounding the WC, during the months it offered overnight accommodations. (Ex D.)

By letter dated May 31, 2024, the WC was provided notice of nine specific concerns regarding perceived differences between the representations WC presented to Council to secure the CUP and what transpired in the neighborhood since the WC opened. (Ex. 39.) Issues contradicting WC's initial representations included: increase in homelessness, increase in loitering, lack of responsiveness or accountability to neighbors, increased law enforcement calls, service of communities beyond Kalispell, lack of being a good neighbor, and lack of transportation for patrons. (*Id.* at pg. 2.) The WC was invited to provide public comment at a hearing, being advised Council may consider whether to rescind or take other appropriate action on WC's CUP. (*Id.*)

After granting an extension (Ex. E), Council held a hearing July 15, 2024. WC presented comments and a slideshow addressing the issues being considered. (Ex. F; Ex. 40.)

At the following July 16, 2024 meeting, Council postponed action to allow the WC to work with the neighborhood to address concerns. (Ex. G.) During the process, WC circulated an August 22, 2024 letter disclaiming its role or ability to take action outside of its property to mitigate the public's concerns, notwithstanding prior representations about being a "good neighbor." WC stated, "FWC cannot agree to take on duties off of FWC's property" and suggested the role for addressing issues was "proper authorities and our neighbors." (Ex. 44.)

With WC having been provided ample notice and an opportunity to be heard, and Council receiving substantial evidence and comment on the issue, Council rescinded the CUP at its September 16, 2024 Meeting (Ex. H.). Resolution No. 6227 outlines the factual basis for rescission, to include:

WHEREAS, the Kalispell City Council finds that during the application process, the Warming Center submitted a letter to the Kalispell Planning Board that included incorrect or untrue statements upon which Council relied in granting approval of a zoning text amendment and the Conditional Use Permit; and

WHEREAS, the Kalispell City Council finds that during the application process, the Warming Center submitted a letter to the Kalispell City Council that included incorrect or untrue statements upon which Council relied in granting approval of a zoning text amendment and the Conditional Use Permit; and

WHEREAS, the Kalispell City Council finds that the application for the Conditional Use Permit signed by Tonya Horn, the Executive Director of the Warming Center, on September 4, 2020 stated, "I hereby certify under penalty of perjury and the laws of the State of Montana that the information submitted herein, on all other submitted forms, documents, plans or any other information

submitted as a part of this application, to be true, complete, and accurate to the best of my knowledge. Should any information or representation submitted in connection with this application be incorrect or untrue, I understand that any approval based thereon may be rescinded, and other appropriate action taken."; and

WHEREAS, the Kalispell City Council finds that Kalispell Police Department call data establishes that the Warming Center's homeless shelter use has created a negative adverse effect on the surrounding neighborhood that exists during the homeless shelter's operating months of October through April and that the adverse effect decreases during the months of May through September when the homeless shelter is not operating; and

WHEREAS, the Kalispell City Council finds that statements from the Warming Center that it will not take responsibility for things that occur off of the property and beyond its control contradict information provided by the Wanning Center in its application for the Conditional Use Permit and its letters to the City Council and the Planning Board; and

WHEREAS**,** the Kalispell City Council finds that public comments from all meetings held by the City Council on the Warming Center 's Conditional Use Permit establish that the Warming Center's homeless shelter use has created a negative adverse effect on the surrounding neighborhood; and

WHEREAS**,** the Kalispell City Council finds that statements by the Warming Center regarding its lack of responsibility for effects on areas beyond its property or within 150 feet of its property contradict statements in its application for the Conditional Use Permit and its letters to the Planning Board and the City Council all of which City Council relied upon in granting approval of a zoning text amendment and the Conditional Use Permit; and

WHEREAS**,** the Kalispell City Council finds that the Kalispell Chamber of Commerce, the Kalispell Downtown Association, and the Kalispell Business Improvement District recommended that the City Council "[i]ncrease police presence in the service triangle around the Warming Center, Fairgrounds, and Gateway Mall

during the busy seasons. In particular, at 6pm and 8am when people are preparing to enter and exit the Warming Center (Winter/Spring)." This recommendation demonstrates that the Warming Center's homeless shelter use has created a negative adverse effect on the surrounding neighborhood; and

WHEREAS, the Kalispell City Council find that information and representations submitted in connection with the Warming Center's application for the Conditional Use Permit is incorrect or untrue; and

WHEREAS, the Kalispell City Council finds that the Warming Center's homeless shelter use has created a negative adverse effect on the surrounding neighborhood; and

WHEREAS, the Kalispell City Council therefore finds that rescinding the Warming Center 's Conditional Use Permit is in the best interests of the City and deems the passage of this resolution as necessary to protect the public health, safety, and welfare.

(Ex. F.) The City's findings are substantiated by the record and public comment.

**ARGUMENT**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *IRWS, LLC v. Elmore Cnty*., 2023 U.S. Dist. LEXIS 228741, 9-10 (2023); *quoting Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). The party seeking a restraining order must establish:

(1) a likelihood of success on the merits;

(2) likely irreparable harm in the absence of a preliminary injunction;

(3) that the balance of equities weighs in favor of an injunction; and

(4) that an injunction is in the public interest.

*Winter*, 555 U.S. at 20. If any factor is not satisfied, the court need not consider remaining factors. *Ctr. for Food Safety v. Vilsack,* 636 F.3d 1166, 1174 (9th Cir. 2011).

**I. Through the guise of a TRO, Plaintiff seeks a mandatory injunction which is improper and requires application of a heightened standard of proof.**

The purpose of a TRO is to maintain the status quo. Plaintiff incorrectly argues the status quo is holding a valid CUP. In truth, the CUP was rescinded September 16, 2024, and Plaintiff's waited until October 9, 2024 to seek relief.

The case parallels *Saeed v. City of Fairfield*, 2023 U.S. Dist. LEXIS 9002 (E.D. Cal. Jan. 18, 2023), wherein a business owner waited months after his license was revoked to file a TRO. The Court found the status quo was that the lack of a business license and the plaintiff was, in fact, seeking an affirmative injunction to reinstate his license. The Court held the TRO would be inappropriate, including because the business owner improperly sought "extraordinary mandatory injunctive relief on a truncated TRO timeframe." *Id.*

The same is true here. The status quo is that Plaintiff's CUP is rescinded. WC is not asking the Court to maintain the status quo, but rather seeks a mandatory injunction against the City. A mandatory injunction "goes well beyond simply maintaining the status quo," and "orders a responsible party to take action." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Here, WC cannot operate without

a valid CUP, so any injunction would necessarily require the City to reinstate the CUP.

As in *Saeed*, Plaintiff improperly seeks mandatory injunctive relief through a TRO. Even if allowed, it results in a heightened standard. Mandatory injunctions are "particularly disfavored," and relief should not issue "unless the facts and law clearly favor the moving party." *Garcia*, at 740.

**II. Plaintiff cannot establish a likelihood of irreparable harm.**

An adequate showing of irreparable harm is the "single most important prerequisite" for the issuance of a TRO. *Wooten v. BNSF Ry. Co.* No. CV 16-139-M-DLC-JCL, 2017 U.S. Dist. LEXIS 40551, at *4 (D. Mont. Mar. 16, 2017). There must be a clear showing Plaintiff is likely to be irreparably harmed. *Real Truth About Obama*, 575 F.3d at 347. The harm must be likely, not just possible. *Wooten*, *citing All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Speculative injury does not constitute irreparable injury." *Id. citing Caribbean Marine Servs.Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).

Irreparable harm is that for which there is no adequate legal remedy. *Arizona Dream Act Coal v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended… are not enough. The possibility that adequate compensatory or other corrective relief

will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974).

Plaintiff asserts the homeless will face the risk of death and injuries. Harm to third parties, however, is inapplicable to the analysis.

> However, Plaintiff provides no authority under which the Court may consider irreparable harm to third parties in lieu of or in addition to irreparable harm to Plaintiff. *See Winter,* 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that *he* is likely to suffer irreparable harm[.]") (emphasis added); *Wooten v. BNSF Railway Co.,* No. CV 16-139-M-DLC-JCL, 2017 U.S. Dist. LEXIS 40564, 2017 WL 1089546, at *1 (D. Mont. Mar. 21, 2017) ("The Court agrees with Judge Lynch that harms alleged against third parties are not relevant to the irreparable harm prong of the Winter analysis.").

*Nutrition Distribution, LLC v. Enhanced Athlete, Inc.*, 2017 U.S. Dist. LEXIS 188380, at *4 (E.D. Cal. Nov. 13, 2017); *see also Tok Air Serv., LLC v. Haaland*, 2021 U.S. Dist. LEXIS 142187, at *22-23 (D. Alaska July 30, 2021) (same). Further, the claimed injury is speculative.

Next, Plaintiff claims CUP rescission "destroyed the Warming Center" as it "cannot lawfully open at its only place of business to perform its sole mission." (Doc. 5 at 15.) This is a dramatic overstatement. CUP rescission does not prevent Plaintiff from operating the WC. The rescission effectively means Plaintiff simply cannot offer overnight lodging. In fact, the WC remained open before and after rescission offering daytime use such as showers, laundry, light food, and other community

recourses. *See* https://www.flatheadwarmingcenter.org/about. Elimination of overnight lodging does not "destroy" the WC.

As such, the facts do not satisfy *hiQ Labs* cited by Plaintiff, which requires a "threat of being driven out of business" and "a threat of 'extinction,'" not merely loss of business revenue. *hiQ Labs, Inc. v. LinkedIn Corp.* , 31 F.4th 1180, 1188-89 (9th Cir. 2022); *see also Legacy Invs., LLC v. Norfolk City Council*, 110 Va. Cir. 392, 404-06 (Cir. Ct. 2022) (revocation of liquor license, when restaurant could continue to operate under strict conditions is not irreparable harm). Loss of donations, which is speculative, can be monetarily compensated. Similarly, employee loss is considered a reparable monetary loss. *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001).

Finally, WC posits a circular argument, claiming that since irreparable harm follows inexorably from deprivation of a constitutional right, no proof of irreparable harm is necessary. First, as discussed below, Plaintiff is unlikely to succeed on the merits of its claims. Second, the WC must prove it will suffer irreparable harm in the future if the TRO is not granted. Proof of prior alleged constitutional injury is insufficient, particularly given the WC has not sought judicial review of the rescission decision or established that but for the alleged constitutional violations, the CUP would not have been rescinded.

Plaintiff failed to make a clear showing the WC is likely to be irreparably harmed. As such, the motion must be denied.

## III. Plaintiff is unlikely to succeed on the merits.

A clear showing of a likelihood of success on the merits is "a threshold inquiry and is the most important factor." *IRWS*, at 21; *citing Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).

Plaintiff argues the standard is not "likelihood of success on the merits," but rather a "fair chance." This is incorrect. The Ninth Circuit's sliding scale approach, holds that only if "the balance of hardships tips sharply in the plaintiff's favor" and the remaining factors are satisfied, plaintiff need not prove "likelihood of success on the merits," but rather "serious questions going to the merits" *All. For The Wild Rockies*, 632 F.3d at 1134-35 (9th Cir. 2011).

As described above, WC will not suffer irreparable harm. WC offers no analysis of "the balance of equities" in its brief. (Doc 5 at 32). For the reasons described in Sections II and IV, the balance of hardships does not "tip sharply" in Plaintiff's favor. Thus, WC must make a clear showing of a likelihood of success on the merits. WC cannot satisfy its burden. The fact and law do not support Plaintiff's Constitutional claims for violation of procedural due process, equal protection, or substantive due process upon which the TRO motion is premised. (Doc. 5).

**A. The WC lacks a protected property interest in the CUP as required for its procedural and substantive due process claims.**

To succeed on substantive or procedural due process claims, a plaintiff must demonstrate it was deprived of a constitutionally protected property interest. *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2011); *Valhalla Custom Homes, Ltd. Liab. Co. v. City of Portland*, 2023 U.S. App. LEXIS 18753, at *2-3 (9th Cir. July 24, 2023). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). The WC lacks any constitutionally protected property interest in the CUP.

Under Montana law, private property owners have no vested property interest in being granted a CUP. *See Powell Cty. v. Country Vill., LLC*, 2009 MT 294, ¶25, 352 Mont. 291, 217 P.3d 508; *Beasley v. Flathead Cty.*, 2009 MT 121, ¶15, 350 Mont. 177, 206 P.3d 915. Decisions relating to CUPs are entirely discretionary. *Id.*; *see also Whitefish 57 Commer., LLC v. City of Whitefish*, 2023 MT 176, ¶14, 413 Mont. 349, 536 P.3d 395.

The Court in *Beasley* described the standard to assess whether a protected property right exists. Consideration is given to whether a property owner had a "reasonable expectation of entitlement" to the CUP and whether the applicable

regulation was couched in mandatory or discretionary terms. *Id.* at ¶14. The standard is high:

> Any significant discretion conferred upon a local agency, however, defeats a claim of entitlement. Thus, a property interest only exists when the legislature has so narrowly circumscribed the issuing agency's discretion that it virtually assures the interest's approval.

*Id.* Because the regulations "vested discretion with the Board to determine whether to grant a CUP" the Court in *Beasley* held any interest in the CUP "did not rise to the level of a protected property or liberty interest" as required for a due process claim. *Id.* at ¶15.

As in *Beasley*, the Kalispell City Code grants Council discretion in the issuance of CUPs. City Code 27.33.090 provides:

> The burden of proof for satisfying the aforementioned criteria considered for approval shall rest with the applicant and not the City Council. The granting of the Conditional Use Permit is a matter of grace, resting in the discretion of the City Council and a refusal is not the denial of a right, conditional or otherwise.

(emphasis added.) The Code provides for the discretionary issuance of a CUP "as a matter of grace," recognizing "refusal is not the denial of a right." Likewise, the Code gives Council the ability to take "any appropriate action or proceedings… to restrain, correct or abate" zoning violations. City Code 27.36.020.

Importantly, before any CUP issued, the WC understood rescission could occur. The Application signed by Plaintiff states: "Should any information or representation submitted in connection with this application be incorrect or untrue,

I understand that any approval based thereon may be rescinded, and other appropriate action taken." (Ex. 7, pg. 3.) This is precisely what came to fruition. The City rescinded the CUP, in part, because information and representations submitted by WC to secure the CUP were incorrect and untrue. (Ex. F.) Given the discretionary language of City Code, combined with WC's recognition of the City's ability to rescind, the WC did not have a "reasonable expectation of entitlement" to a continued CUP. As such, Plaintiff had no vested property interest.

The case of *IRWS, LLC v. Elmore Cnty* offers persuasive authority. In *IRWS*, a private entity sought a TRO after the County revoked its CUP to operate a landfill. *IRWS*, *2-7. The court recognized CUPs do not give the permittee any "legitimate claim of entitlement." *Id.* at *14. Relying on Idaho's Code providing a CUP "may be granted," the court held there is no recognized property interest in a CUP, such that it could be revoked. *IRWS*, *13-14. As such, the Court denied the TRO and dismissed the due process claims. Similar to *IRWS* and its progeny, the CUP permit was granted to the WC at the discretion of Council and is, therefore, not a protected property interest.

In arguing a vested property right in the CUP exists, Plaintiff relies on two cases: *Korean American* and *Kerley Industries.* (Doc. 5 at 17-18.) Both antiquated cases do not apply Montana law. Acknowledging property rights arise out of state

law, *Kerley* applied Arizona law. *Kerley Indus., Inc. v. Pima Cty.*, 785 F.2d 1444, 1446 (9th Cir. 1986). *IRWS* distinguished *Kerley*, stating:

> The point of the *Kerley* decision was not that the Plaintiff had a protected property interest under Arizona law *in the abstract* but rather that the law "contain[ed] detailed provisions for the[] suspension and revocation" of CUPs which "trigger[ed] the constitutional requirements of due process."

*IRWS* at *15. Unlike Arizona, Montana does not have detailed provisions for revocation of CUPs, rendering *Kerley* inapplicable.

Similarly, *Korean American* applied California law, including Los Angeles Code § 12.24 codifying due process requirements for permit revocation. *Korean Am. Legal Advocacy Found. v. City of L.A.* , 23 Cal. App. 4th 376, 390, 28 Cal. Rptr. 2d 530, 540 (1994). Montana has no remotely similar laws.

*IRWS*, issued this year based on Idaho law, which is similar to Montana law, provides the appropriate analysis. The WC has no protected property interest in the CUP, which was subject to rescission, as acknowledged in the CUP application. Under the circumstances, the WC lacks any constitutionally protected property interest in the CUP, such that its due process claims are subject to dismissal.

**B. Even if the Constitutional right to procedural due process was applicable, the WC was afforded due process.**

A procedural due process claim contains two elements: (1) deprivation of a constitutionally protected interest; and (2) denial of adequate procedural protection. *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 970 (9th Cir.

2010). As discussed above, no protected property interest applies. Further, the WC was afforded due process.

Procedural due process requires a party affected by government action receive "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The WC was given notice and the opportunity to be heard on the issues which led to rescission. (Exs. 39, F, and G.) In fact, WC presented a power point presentation entitled “Flathead WC Official Response to Concerns Regarding Potential Revocation of the Nonprofit’s Condition Use Permit” on July 15, 2024 addressing the issues outlined in the notice. (Exs. 39 and 40.)

Contrary to Plaintiff’s argument, cross-examination is not required. Procedural due process does not require "a full evidentiary hearing including the right to confront and cross-examine adverse witnesses." *Cordova v. City of L.A.*, 2016 U.S. Dist. LEXIS 17943, at *25 (C.D. Cal. Jan. 20, 2016). CUPs are commonly denied and revoked without the opportunity for cross-examination. *See Legacy; IWIS; see also Dayalji v. City of Compton* No. 97-56369, 1999 U.S. App. LEXIS 4083, at *4 (9th Cir. Mar. 11, 1999) (rejecting argument property owners were entitled to cross-examine witness on CUP application). Plaintiff cites no cases holding cross-examination is a constitutionally required component for rescission or revocation of a CUP.

Plaintiff's reliance on case law on "collective punishment" is misplaced. (Doc 5 at p. 20-21). Here, the CUP was rescinded based on findings specific to the WC. *See* Resolution No. 6227. The Resolution does not revoke all CUPs issued to homeless shelters, rendering the *Vasquez* case on "collective punishment" inapplicable. *Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013).

Plaintiff claims it was not given a "fair trial in a fair tribunal," asserting allegations of bias and a "rigged political process." Generalized allegations are insufficient, however, under the law. To prove a claim of unconstitutional bias against a state body charged with licensure, a plaintiff must "overcome a presumption of honesty and integrity" on the part of decision makers. *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995). Adverse findings or rulings do not evidence an unfair trial or tribunal. *Id.* at 741. Rather, a plaintiff must demonstrate (1) actual bias on the part of the adjudicator or (2) the adjudicator's pecuniary or personal interest in the outcome of the proceeding. *Id.* Plaintiff has not identified any evidence of a Councilmember's pecuniary or personal interest in the proceedings. As such, proof must be of actual bias. *See Killgore v. City of S. El Monte*, 860 F. App'x 521, 522 (9th Cir. 2021) (upholding dismissal of procedural due process claim based on CUP revocation due to lack of evidence of bias.)

The September 16, 2021 Council meeting depicts a neutral and fair tribunal deliberating and deciding the issue of rescission. (Ex. I transcript of meeting; Ex. J

video to be filed pursuant to Local Civil Rule 5.1(b)(6).) The only specific evidence of alleged bias raised by Plaintiff is a selective quote from Councilmember Gabriel, taken out of context. Gabriel's complete statement demonstrates her neutrality. She expressed, "None of us wanted to or want to remove this permit," but acknowledged neighbors are experiencing "masturbation, pooping on slides and in yards and on benches, sexual acts in yards, drug use paraphernalia, … use[d] underwear left in yards, indecent exposure, screaming, pounding on doors and windows." (Ex. I, CITY 1437-1438.) She expressed being "very conflicted" due to her personal beliefs as a Lutheran, yet considering the comments of the complaining neighbors, who elected her. (*Id.* at 1439.) She exclaimed the WC "service is great, it's needed, but it's how it's being delivered and what we were told was going to happen isn't happening. That's the frustrating part." (*Id.* at 1440.) Gabriel's comments, in totality, demonstrate her neutrality.

Plaintiff complains the City could have used zoning citations or nuisance laws to address the public complaints. While that course of action may have been available, Council was the entity ultimately charged with approving or denying CUPs. *See* Kalispell City Code § 27.33.040(6). The WC's Application noted "approval … may be rescinded" by Council (Doc. 1-8). The Council was the appropriate body to consider rescission given its authority, the concerns raised, and the WC's failure to comply with representations made to Council upon which

discretionary approval was granted. That alternative enforcement measures could have been pursued does not evidence bias.

Asserting a lack of CUP revocation case law, Plaintiff relies on case law relating to termination hearings of public employees and revocation of immigration permits. (Doc. 5 at pg. 25-26.) Contrary to Plaintiff's argument, there is not a "dearth of CUP-revocation precedent" requiring resort to inapplicable case law. (Doc. 5 at 19.) Available case law on CUP revocation demonstrates notice and an opportunity to be heard is sufficient.

In *IRWS*, the court addressed the issue of procedural due process in PUD revocations, stating:

> In sum, IRWS was given notice of its violations, it was given notice of Elmore County's intent to revoke its CUP, it was giving notices of hearings, notice of appeals, and opportunities to present its position throughout every step of this process. … This is not a situation like *Kerley* where one party summarily and arbitrarily took away another party's permit. IRWS has been involved from the get-go. IRWS may disagree with the outcome of the process, or even the process itself, but it cannot claim to have received *no* process, nor can its disagreement with the process (or outcome) rise to the level of a constitutional violation. *See Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1148 (D. Idaho 2015) (noting that, although the plaintiff disagreed with the process and outcome, such did not demonstrate that "the City failed to satisfy the essential due process demands of notice and an opportunity to be heard").

*IRWS* at *17-18.

Furthermore, *Oneida* discusses due process for PUD revocation. The City issued a CUP for a facility to convert municipal waste to electricity. *Oneida Seven*

*Generations Corp. v. City of Green Bay*, 2017 U.S. Dist. LEXIS 86509, at *2 (E.D. Wis. June 6, 2017). After approval, Oneida spent money pursuing the operation. *Id.* at *4. In the meantime, citizen opposition to the project grew and Council reassessed whether Oniedo provided accurate information in support of its CUP application. Oneida prevailed in State Court judicial review of the rescission decision. *Id.* at *9. Even so, the Court determined no constitutional violations occurred noting "procedures [due] in zoning cases are minimal." *Id.* at *12 *citing Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 96 S. Ct. 2358, 49 L. Ed. 2d 132 (1976)). Further, "Municipalities need not use adjudicative procedures to make zoning decisions." *Id.* The Court found procedural due process satisfied, explaining:

> Here, there is no dispute that OSGC received notice and a hearing at which it was able to address the allegations that it had misrepresented certain features of the project prior to the initial vote granting its application for the CUP. But more importantly, the procedural protection afforded OSGC's interest in the CUP did not end with the decision of the Common Council. OSGC sought judicial review in state court via writ of certiorari and ultimately succeeded in having the City's decision rescinding its CUP overturned. "A person contending that state or local regulation of the use of land has gone overboard must repair to state court." *River Park*, 23 F.3d at 167. This is because "when the claim depends on the due process clause, state litigation may supply that process." *Id.* (citing *Eastlake*, 426 U.S. at 679 n.13).

*Id.* at *13.

Similarly, Plaintiff was provided notice and afforded multiple opportunities to be heard, over the course of months, on whether the CUP should be rescinded.

Irrespective of whether Plaintiff had a protected property interest in the CUP, due process was provided. *Id.* at *14.

**C. The WC's Equal Protection claim fails. The City Council had a rational basis for the difference in treatment.**

Plaintiff alleges rescission of the CUP violates equal protection because similarly situated properties, including two other homeless shelters, have not been subject to rescission or revocation. As recognized by Plaintiff, this presents a "class of one" claim, requiring proof: (1) Plaintiff was intentionally treated differently from others similarly situated; and (2) there was no rational basis for the difference in treatment. *Killgore*, 2019 U.S. Dist. LEXIS 228157 at *27 *citing Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004).

In arguing an equal protection claim, Plaintiff misconstrues the evidence and relevance of law enforcement data relied on by Council. The data was not considered for the total amount of activity in the vicinity of homeless shelters, but rather to assess whether there was an increase in criminal activity during the period in which the WC offered overnight boarding. Per Resolution 6227:

> … Council finds that Kalispell Police Department call data establishes that the WC's homeless shelter use has created a negative adverse effect on the surrounding neighborhood that exists during the homeless shelter's operating months of October through April and that the adverse effect decreases during the months of May through September when the homeless shelter is not operating;

(Ex. G, D.)

There is no evidence the WC was intentionally treated differently from others similarly situated. Council heard substantial public concern regarding adverse effects the WC had on the surrounding neighborhood during periods in which overnight stays occurred, as supported by law enforcement records. The WC was granted a CUP based on representations as to how the WC would operate. Those representations were determined to be untrue. WC submits no evidence to demonstrate similar circumstances of any other homeless shelters or PUDs.

The WC fails to provide evidence of differential treatment or that "there is no rational basis for [any] difference of treatment," both of which are necessary to succeed on an equal protection claim. *Akshar Glob. Invs. Corp. v. City of L.A.*, 817 F. App'x 301, 304-05 (9th Cir. 2020) (dismissing equal protection claim related to revocation of CUP). Even assuming Plaintiff was treated differently than others similarly situated, Resolution 6227 provides the rationale basis for the action taken. *Killgore*, 2019 U.S. Dist. LEXIS 228157, at *26-27 (recognizing the City's decision "clearly states the alleged rational basis for the revocation of the CUP" and dismissing the equal protection claim.)

Plaintiff is unlikely to succeed on its equal protection claim.

**D. Even if the Constitutional right to substantive due process was applicable, the City did not violate it.**

WC's substantive due process claim fails because it has no constitutionally protected property interest in the CUP. *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th

Cir. 2008). Further, Plaintiff cannot satisfy the requisite proof that Council's rescission amounts to an abuse of power lacking in any reasonable justification.

*Peak Oil* describes applicable standards. In *Peak,* the County issued Zoning Clearance to Peak to engage in oil drilling. *Peak Oil Holdings LLC v. Cty. of Ventura* No., 2023 U.S. Dist. LEXIS 222231, at *3. (C.D. Cal. Dec. 13, 2023). Five years later, after the County believed Peak's operations differed materially than what was requested and approved in the application, City staff issued a letter nullifying the Zoning Clearance. The court upheld summary judgment on Peak's substantive due process claim, describing the applicable standards:

> "Accordingly, the irreducible minimum of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose." *Shanks,* 540 F.3d at 1087 (simplified); *see also Matsuda v. City & Cty. of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008) ("[S]tate action which neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights will violate substantive due process only if the action is not rationally related to a legitimate governmental purpose.") (simplified). The Ninth Circuit has described a plaintiff's burden on such a claim as exceedingly high. *Shanks*, 540 F.3d at 1088.
>
> When executive action is at issue, that is, a specific act of a governmental officer, "only egregious official conduct can be said to be arbitrary in the constitutional sense: it must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." *Id.; see also City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found*., 538 U.S. 188, 198, 123 S. Ct. 1389, 155 L. Ed. 2d 349 (2003) (rejecting substantive due process claim because city's refusal to issue building permits "in no sense constituted egregious or arbitrary government conduct"). A plaintiff cannot sustain a substantive due process claim if "[i]t is at least fairly debatable" that

> a municipality rationally furthered its legitimate interest through its action. *See Shanks*, 540 F.3d at 1089.

*Id.* at *14-15.

Here, even assuming a protected property interest existed, WC's substantive due process claim would fail, as it is "at least fairly debatable" Council rationally furthered its legitimate government interest through action, including by (1) eliminating a negative adverse effect on WC's surrounding neighborhood and (2) holding CUP applicants accountable to comply with the information and representations made in securing a CUP.

Plaintiff proclaims it has a "fair chance" in demonstrating arbitrary action, claiming Council's action was motivated by political pressure, citing *Del Monte*. (Doc. 5 at 29.) In *Peak Oil*, the Court distinguished the argument, noting the government in *Del Monte* only gave "broad conclusory reasons" for an "abrupt change in course," whereas in *Peak Oil*, the Board "provided specific and non-conclusory reasons for upholding" the nullification. *Peak Oil*, at *17-18. Here, the City's rescission was not an "abrupt change in course," and there were specific, non-conclusory reasons for the CUP rescission. The City can satisfy the low threshold of demonstrating it is "at least fairly debatable" the Council rationally furthered its legitimate interest through action.

Even an unwise or legally erroneous decision to revoke a CUP does not rise to the level of being constitutionally arbitrary as required for a substantive due

process claim. *See Killgore*, 2019 U.S. Dist. LEXIS 228157, at *24-26 (holding unwise or legally erroneous "decision to revoke a CUP falls substantially short of being constitutionally arbitrary"); *Oneida*, 2017 U.S. Dist. LEXIS 86509 at *17 (even though revocation based on popular opinion and alleged misrepresentations in application was improper and reversed upon judicial review, no violation of substantive due process occurred).

WC is unlikely to succeed on its substantive due process claim.

## IV. The balance of equities and public interest does not weigh in favor of an injunction.

In urging the Court to issue a TRO, Plaintiff does not analyze "the balance of equities" or "public interest" in its brief. (Doc 5 at 32). Plaintiff proclaims, "No separate analysis is required for the public interest and balance of equities." *Id*. This Court, however, has made clear in other decisions "Plaintiff must establish . . . the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Native Ecosystems Council v. Marten,* 2018 U.S. Dist LEXIS 107446 *2.

Where no analysis is made, there should be no issuance of a TRO. First, the City's actions do not raise a constitutional violation for the reasons previously addressed. Second, Plaintiff fails to meet is burden under the law when it omits analysis of the "balance of equities" or "public interest." Third, if the Court were to entertain an analysis of "the balance of equities" and "public interest," it would necessarily have to balance and consider the factors, equities and public interest set

forth in Resolution No. 6227. (Ex. F.) These include (1) incorrect and untrue statements during the application process; (2) the finding of a negative adverse effect upon the neighborhood, (3) the undisputed police department data, and (4) WC's refusal to accept responsibility for issues raised by or connected with the WC.

The balance of equities weigh against a TRO. As described in Section II, the WC has not demonstrated it will suffer irreparable injury in the absence of a restraining order. On the other hand, the City will be harmed by the Court's issuance of a TRO. After months and months of discussion, public meetings, communication, and attempted mediation, the City chose to revoke a CUP on numerous independent grounds, which include safety, planning and zoning concerns.

Moreover, to simply allow Plaintiff to continue its operation, despite losing its permit, would essentially eliminate the City's ability to enforce its own code. The City owes a duty to all its citizens, including those that spoke in favor of rescission, and those that were proximately harmed, physically, emotionally, and financially, by its continued operation. Reinstituting the CUP would insult and diminish the residents and small business owners harmed by Plaintiff. Significant public harm to the neighborhood surrounding the WC would result should a restraining order be granted. The balance of equities and public interest do not weigh in favor of a restraining order.

## CONCLUSION

For the foregoing reasons, the City respectfully requests the Court deny Plaintiff's motion for a temporary restraining order.

Dated this 11th day of October, 2024.

HAMMER, QUINN & SHAW PLLC

/s/ Marcel A. Quinn
Marcel A. Quinn
Todd A. Hammer
Seth H. Rogers
*Attorneys for Defendant City of Kalispell*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word, is 6,423 words, excluding the caption and certificate of compliance.

DATED this 11th day of October, 2024.

/s/ Marcel A. Quinn
Marcel A. Quinn