Todd A. Hammer
Marcel A. Quinn
Seth H. Rogers
HAMMER, QUINN & SHAW PLLC
100 Financial Drive, Suite 100
P.O. Box 7310
Kalispell, MT 59904-0310
Telephone:  (406) 755-2225
Facsimile:  (406) 755-5155
Email:      toddhammer@attorneysmontana.com
            marcelquinn@attorneysmontana.com
            sethrogers@attorneysmontana.com

*Attorneys for Defendant City of Kalispell*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FLATHEAD WARMING CENTER,<br><br>　　　　　Plaintiff,<br>　v.<br><br>CITY OF KALISPELL,<br><br>　　　　　Defendant. | Case No:  CV 24-141-M-DLC<br><br>DEFENDANT'S ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL |

Defendant City of Kalispell ("the City") answers Plaintiff's Verified Complaint as follows:

## INTRODUCTION

1.      The allegations contained in Paragraph 1 of the Verified Complaint are a statement of claim and therefore do not require a response from the City. To the extent a response may be required, the allegations are denied.

## JURISDICTION AND VENUE

2.      The allegations contained in Paragraph 2 of the Verified Complaint are a statement of claim and therefore do not require a response from the City. To the extent a response may be required, the City states the Verified Complaint speaks for itself.

3.      The City admits the allegations contained in Paragraphs 4 and 5.

## PARTIES

4.       Answering Paragraph 5, the City admits the Flathead Warming Center is a domestic non-profit corporation in good standing with the Montana Secretary of State, with a principal address of 889 North Meridian Road in Kalispell, Montana.  The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 5 and therefore denies the same.

5.      The City admits the allegations contained in Paragraph 6.

## FACTUAL ALLEGATIONS

6.      The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 7 through 19 and therefore denies the same.

7.      Answering Paragraph 20, the City admits the City's Planning Department provided the Warming Center application materials and some limited

instruction on procedures to request a zoning amendment and conditional use permit.  The City denies the remaining allegations contained in Paragraph 20.

8.      The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 21 and therefore denies the same.

9.      Answering Paragraph 22, the City admits Planning Department staff provided the Warming Center application materials and some limited instruction on procedures to request a zoning amendment and conditional use permit.  The City denies it provided guidance and direction for navigating zoning ordinances or applying for permits.  The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 22 and therefore denies the same.

10.     Answering Paragraph 23, the City admits Planning Department staff informed Tonya Horn that in order to operate a "homeless shelter" within the B-1 zone, the zoning ordinance would need to be amended to include "homeless shelter" as a conditionally permitted use and the Warming Center would need to have a conditional-use permit, granted by City Council, to operate a homeless shelter.  The City denies the remaining allegations contained in Paragraph 23.

11.     Answering Paragraph 24, the City admits Tonya Horn asked Planning Department staff in writing if the Warming Center needed legal counsel to complete what she referred to as the "Petition For Zoning Text Amendment," to

which staff responded, in part: "You do not need legal council [sic] to fill out the application, but it will need to be complete.  We can help you out with that."  The City denies the remaining allegations contained in Paragraph 24.

12.     The City denies the allegations contained in Paragraph 25.

13.     Answer Paragraph 26, the City admits the Warming Center submitted a petition for zoning ordinance amendment and CUP application for a property on Second Street, which were subsequently withdrawn.  The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 26 and therefore denies the same.

14.     Answering Paragraph 27, the City admits Tonya Horn emailed Planning Department on August 14, 2020, which email speaks for itself.  The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 27 and therefore denies the same.

15.     Answering Paragraph 28, the City admits Planning Department staff sent an August 17, 2020 email to Tonya Horn, which email speaks for itself.  The City denies the remaining allegations contained in Paragraph 28.

16.     Answering Paragraph 29, the City admits Planning Department staff sent an August 17, 2020 email to Tonya Horn, which email speaks for itself.  The City denies the remaining allegations contained in Paragraph 29.

17.     The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 30 through 34 and therefore denies the same.

18.     The City denies the allegations contained in Paragraph 35.

19.     Paragraph 36 alleges statements of law to which no response is required.  To the extent a response is required, the City admits the allegations therein.

20.     Paragraph 37 alleges statements of law to which no response is required.  To the extent a response is required, the City admits that before the Warming Center proposed a zoning amendment for the B-1 zone, homeless shelters were a use which may be permitted by a conditional use permit in zones RA-1, RA-2, H-1, B-2, B-3, B-4 and B-5.  The City denies the remaining allegations contained in Paragraph 37.

21.     The City admits the allegations contained in Paragraphs 38 and 39.

22.     Answer Paragraph 40, the City denies the allegation Tonya was the applicant.  The City admits Tonya Horn signed the application for a CUP on behalf of the Flathead Warming Center.  The City admits the remaining allegations contained in Paragraph 40.

23.     Answering Paragraph 41, the City admits the remaining 12 pages of the September 4, 2020 application were comprised of attachments where the

Warming Center addressed the information required by Sections 2 and 3 of the Application for CUP.  The City admits those attachments included information about the Warming Center's operations, a sketch of the proposed exterior, a property survey, the expected internal floor plan, and a Warming Center newsletter.  The City denies the remaining allegations contained in Paragraph 41.

24.     Answering Paragraph 42, the City admits the Planning Department staff examined the Warming Center's CUP Application and, in reliance on the same, issued Staff Report #KZTA-20-01.  The Staff Report speaks for itself.  The City admits Paragraph 42 accurately, but selectively, quotes from the Staff Report. The report should be read in its entirety.  The City denies the remaining allegations contained in Paragraph 42.

25.     Answering Paragraph 43, the City admits the Planning Department issued the October 7, 2020 Staff Report #KCU-20-05, which report speaks for itself.  The City admits Paragraph 43 accurately, but selectively, quotes from the Staff Report.  The report should be read in its entirety.

26.     Answering Paragraph 44, the City admits the Planning Department staff examined the Warming Center's CUP Application and, in reliance on the same, examined each of the six enumerated "review criteria" in Zoning Ordinance § 27.33.080(2).  The City further admits the Planning Department issued Staff

Report #KCU-20-05, which speaks for itself.  The City denies the remaining allegations contained in Paragraph 44.

27.     Answering Paragraph 45, the City admits the Planning Department, in analyzing the review criterion based on the representations and information in the Warming Center's CUP Application, did not identify any negative findings, or adverse impacts.

28.     Answering Paragraph 46, the City admits the Planning Department issued the October 7, 2020 Staff Report #KCU-20-05, which report speaks for itself.  The City admits that, in reliance on the representations and information in the Warming Center's CUP Application, the Planning Department analyzed the five sub-criteria of the "neighborhood impacts" criterion of the Zoning Ordinance. The City admits Paragraph 46 accurately, but selectively, quotes from the Staff Report, which report should be read in its entirety. The City denies the remaining allegations contained in Paragraph 46.

29.     Answering Paragraph 47, the City admits the Planning Department issued the October 7, 2020 Staff Report #KCU-20-05, which report speaks for itself.  The City admits that, in reliance on the representations and information in the Warming Center's CUP Application, the Planning Department evaluated the "effects on property values" criterion in Zoning Ordinance § 27.33.080(f), and

found "[n]o significant impacts on property values are anticipated as a result of the requested conditional use of the property."

30.     Answering Paragraph 48, the City admits that on October 13, 2020, the Kalispell Planning Board and Zoning Commission held a public meeting in which it considered both the Warming Center's petition for a zoning amendment and the application for a CUP.  The City admits it examined Staff Report #KZTA-20-01 and Staff Report # KCU-20-05, heard public comments, discussed the requests, and asked Planning Department staff questions. The City further admits, in reliance on the representations and information in the Warming Center's CUP Application and other information, the Board voted unanimously to (1) adopt both reports and (2) recommend Kalispell City Council adopt the zoning amendment and approve the CUP, subject to the proposed conditions. The City denies the remaining allegations contained in Paragraph 48.

31.     The City admits the allegations contained in Paragraphs 49 and 50.

32.     Answering Paragraph 51, the City admits that on November 2, 2020, Planning Department staff submitted a memo to the City Manager, describing the Planning Board's recommendation that the City Council approve the first reading of Ordinance 1851, an ordinance to amend the Zoning Ordinance to add homeless shelters as a use which may be permitted by a conditional use permit.  The City further admits the memorandum included all of the Planning Board's materials on

the zoning amendment from the October 13th meeting.  The City denies the remaining allegations contained in Paragraph 51.

33.    The City admits the allegations contained in Paragraphs 52 and 53.

34.    Answering Paragraphs 54, the City admits that on November 2, 2020, Planning Department staff submitted a memo to the City Manager, describing the Planning Board's recommendation that the City Council approve the Warming Center's request for a conditional use permit to use 889 North Meridian for a homeless shelter with nine conditions.  The City further admits the memorandum included the Planning Board's materials on the Warming Center's CUP Application from the October 13th meeting, including the Warming Center's CUP Application.  The City denies the remaining allegations contained in Paragraph 54.

35.    The City admits the allegations contained in Paragraphs 55 through 60.

36.    The City denies the allegations contained in Paragraph 61.

37.    Answering Paragraph 62, the City admits that during the October 13, 2020 Kalispell Planning Board and Zoning Commission meeting and the November 2, 2020 City Council meeting, public comments referred to homeless individuals in the area surrounding the Warming Center's proposed location. The City denies the remaining allegations contained in Paragraph 62.

38.     Answering Paragraph 63, the City admits the October 13, 2020 planning board video and November 2, 2020 video speaks for itself.  The City denies the remaining allegations contained in Paragraph 38.

39.     The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 64 and therefore denies the same.

40.     Answering Paragraph 65, the City admits the November 2, 2020 City Council meeting video speaks for itself.  The City denies the remaining allegations contained in Paragraph 65.

41.     The City admits the allegations contained in Paragraphs 66 and 67.

42.     The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 68 through 71 and therefore denies the same.

43.     Answering Paragraph 72, the City admits that for the winter of 2020, the City's Building Department issued the Warming Center a temporary certificate of occupation.  The City denies the remaining allegations contained in Paragraph 72.

44.     The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 73 and 74 and therefore denies the same.

45.     The City denies the allegations contained in Paragraphs 75.

46.     Answering Paragraph 76, the City admits that as the winter of 2021 was approaching, the Warming Center had completed some, but not all, required renovations.  The City further admits that it issued the Warming Center a second temporary of certificate of occupation.   The City denies the remaining allegations contained in Paragraph 76.

47.     Answering Paragraph 77, the City admits that on October 16, 2021, the Warming Center hosted the grand opening at 889 North Meridian. The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 77 and therefore denies the same.

48.     The City admits the allegations contained in Paragraph 78 of the Verified Complaint.

49.     The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 79 and 80 of the Verified Complaint and therefore denies the same.

50.     Answering Paragraph 81, the City admits that up until the time the CUP was rescinded, the City's understanding was that the Warming Center only offered overnight shelter from October through April, and only offered showers and laundry for limited hours a few days of each week during the summer.  The City denies the remaining allegations contained in Paragraph 81.

51.     The City admits the allegations contained in Paragraphs 82 through 85.

52.     The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 86 and therefore denies the same.

53.     The City admits the allegations contained in Paragraphs 87 through 92.

54.     Answering Paragraph 93, the City admits the Warming Center was advised that if the remaining construction work was not complete, the Warming Center would be required to complete a PIA and furnish a bond, after which time the City would issue another temporary certificate of occupation expiring in the spring of 2023, which would allow 40 beds. The City denies the remaining allegations contained in Paragraph 93.

55.     The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 94 of the Verified Complaint and therefore denies the same.

56.     Answering Paragraph 95, the City admits that in the fall of 2022, the Warming Center had not satisfied its conditional Certificate of Occupation, as the following issues remained outstanding: accessible ingress / egress into/out of the building; sidewalk improvements; parking lot and site work improvements; fire

damper installation and courtyard fencing. The City denies the remaining allegations contained in Paragraph 95.

57.    The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 96, 97 and 98 and therefore denies the same.

58.    Answering Paragraph 99, the City denies the allegations that in November 2022 the Planning Department staff determined the Warming Cetner had complied with the conditions of the CUP. The City admits the remaining allegations contained in Paragraph 99.

59.    The City admits the allegations contained in Paragraph 100.

60.    The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 101 through 121 and therefore denies the same.

61.    Answering Paragraph 122, the City denies the allegations that Kalispell and the surrounding Flathead County have seen a corresponding increase in the number of homeless people in recent years. The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 122 and therefore denies the same.

62.    Answering Paragraph 123, the City admits that the Planning Board, in recommending the Warming Center's CUP be granted in 2020, noted an increase

in homelessness. The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 123 and therefore denies the same.

63.    The City admits the allegations contained in Paragraph 124.

64.    Answering Paragraph 125, the City admits that 2020 comments from the public and City Council discussed issues associated with the homeless population in Kalispell and acknowledged there were some homeless individuals in the neighborhood surrounding the Warming Center's proposed location.  The City denies the remaining allegations contained in Paragraph 125.

65.    The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 126 through 128 and therefore denies the same.

66.    Answering the first sentence of Paragraph 129, the City admits that the City Council knew that homeless individuals would visit and travel by various means including by bus and church vans to and from the Warming Center.  The City denies the remaining allegations contained in Paragraph 129.

67.    The City denies the allegations contained in Paragraphs 130 and 131.

68.    The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 132 through 142 and therefore denies the same.

69.     The City admits the allegations contained in Paragraph 143.

70.     The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 144 through 146 and therefore denies the same.

71.     The City denies the allegations contained in Paragraphs 147 and 148.

72.     The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 149 of the Verified Complaint and therefore denies the same.

73.     The City denies the allegations contained in Paragraphs 150 through 152.

74.     Answering Paragraph 153, the City admits that on August 1, 2024, City Councilmember Chad Graham read a prepared comment to his fellow councilmembers raising a concern about public complaints on adverse impacts from the Warming Center.  The City further admits Councilmember Graham quoted and repeatedly referenced the Warming Center's CUP application from 2020.  The video of the August 1, 2024 City Council meeting speaks for itself. Graham said, in part: "the information and application materials I used to inform my decision [to grant the CUP] are not currently reflecting the current condition of the neighborhood, and the surrounding neighborhood."  The City denies the remaining allegations contained in Paragraph 153.

75.    Answering Paragraph 154, the City denies the allegation Councilmember Graham summarized complaints he received from the Kalispell community about issues stemming from an increased homeless population. The City admits the remaining allegations contained in Paragraph 154 of the Verified Complaint.

76.    Answering Paragraph 155, the City states the video of the August 1, 2024 City Council meeting speaks for itself.  The City admits that it was proposed and agreed for City Council to review the Warming Center's CUP and application materials.  It was also acknowledged that the CUP was "fair game because a permit is a matter of grace by the Council."  The City denies the remaining allegations contained in Paragraph 155.

77.    The allegations of Paragraph 156 are statements of law, to which no response is required.  To the extent a response is required, the City denies the allegation that the City Manager's understanding of the law is incorrect.  The City admits Paragraph 156 selectively and partially quotes some portions of Kalispell Cide Code, while disregarding other Montana statutes, Kalispell City Code and the CUP application which allow rescission.

78.    The City denies the allegations contained in Paragraphs 157 and 158.

79.    The allegations of Paragraph 159 are statements of law to which no response is required.  To the extent a response is required, the City admits per

Kalispell City code 27.33.050, "Failure to comply with the terms and/or conditions of a Conditional Use Permit is a violation of the Zoning Ordinance..."  The City denies the allegation that violations of the Zoning Ordinance must be addressed by the zoning administrator.  Per Kalispell City Code 27.36.020, City Council is permitted to institute any appropriate action or proceedings, consistent with § 76-2-308 MCA.  The City alleges, under the Montana Constitution, Montana Code Annotated and the Kalispell City Code, it had the authority to rescind the CUP.

80.     The allegations of Paragraph 160 are statements of law to which no response is required.  To the extent a response is required, the City denies Plaintiff's characterization of Kalispell City Code 27.36.20.

81.      The City denies the allegations contained in Paragraphs 161 through 167.

82.     The City admits the allegations contained in Paragraph 168.

83.     The City denies the allegations contained in Paragraph 169.

84.     The City admits the allegations contained in Paragraphs 170 and 171.

85.     Answering Paragraph 172, the City admits that the video of the May 13, 2024 City Council work session speaks for itself.  The City denies the remaining allegations contained in Paragraph 172.

86.     Answering Paragraph 173, the City admits the Mayor opened the May 13, 2024 work session for public comment.  The City denies that the Warming

Page 17

Center was treated simply as members of the general public.  Tonya Horn was given unlimited time to respond to the concerns raised.  The City admits Warming Center supporters were treated as members of the general public who could make comment on the work session topic.

87.     Answering Paragraph 174, the City admits that the video of the May 13, 2024 City Council work session speaks for itself.  The City further admits that after almost an hour of public comments, City Council only heard from two neighbors with concerns because the first hour was predominately consumed by Warming Center staff, volunteers and/or supporters.  The City further admits the Mayor requested to prioritize comments of neighbors with concerns.  The City denies the remaining allegations contained in Paragraph 174.

88.      The City admits the allegations contained in Paragraphs 175 through 177.

89.     The City denies the allegations contained in Paragraph 178.

90.     The City admits the allegations contained in Paragraphs 179.

91.     The City denies the allegations contained in Paragraph 180.

92.     The City admits the allegations contained in Paragraph 181.

93.     The City denies the allegations contained in Paragraph 182.

94.     Answering Paragraph 183, the City admits that following the work sessions, the City Attorney sent the Warming Center a May 31, 2024 letter

providing the Warming Center notice and an opportunity to be heard on nine concerns. The May 31, 2024 letter speaks for itself. The City admits the letter includes areas of specific concerns regarding perceived differences between the representations the Warming Center presented to Council, through documents and testimony, during the application process for the CUP and what has transpired in the neighborhood since the Warming Center opened in 2020. The City further admits the letter identified which concerns were supported by public comments and/or other evidence, such as law enforcement call data. The City denies the remaining allegations contained in Paragraph 183.

95.    Answering Paragraph 184, the City admits it invited the Warming Center to respond to the nine concerns raised in the May 31, 2024 letter at a regularly scheduled City Council meeting. The City denies the remaining allegations contained in Paragraph 184.

96.    Answering Paragraph 185, the City admits that the Warming Center made a detailed presentation at the July 15, 2024 City Council Meeting responding to the nine concerns raised in the May 31, 2024 letter. The City denies the remaining allegations contained in Paragraph 185.

97.    The City denies the allegations contained in Paragraph 186.

98.    Answering Paragraph 187, the City denies the allegation it postponed the decision to revoke the Warming Center's CUP. The City affirmatively states it

postponed the decision of whether to revoke or take other action.  The City further

denies the allegation that the mediators were Mayor-appointed.  The City admits

the remaining allegations contained in Paragraph 187.

99.    The City denies the allegations contained in Paragraphs 188.

100.    Answering Paragraph 189, the City denies mediation was under threat

of CUP revocation or that the mediation was doomed to fail. The City is currently

without sufficient information to either admit or deny the remaining allegations

contained in Paragraph 189 and therefore denies the same.

101.    The City is currently without sufficient information to either admit or

deny the allegations contained in Paragraphs 190 through 193 and therefore denies

the same.

102.    Answering Paragraph 194, the City admits Tonya Horn wrote an

August 29, 2024 email to public comment, which email speaks for itself. The City

is currently without sufficient information to either admit or deny the remaining

allegations contained in Paragraphs 194 and therefore denies the same.

103.    Answering Paragraph 195, the City admits that on September 16,

2024, City Council took up potential action on the Warming Center's CUP.  The

City denies the remaining allegations contained in Paragraph 195.

104.    Answering Paragraph 196, the City admits the agenda on September

16, 2024 was for "Potential Action on Conditional Use Permit of Flathead

Warming Center."  The City further admits that on September 16, 2024, City

Council passed Resolution 6227 on a six to three vote. The City denies the

remaining allegations contained in Paragraph 196.

105.    The City admits the allegations contained in Paragraph 197.

106.    The City denies the allegations contained in Paragraph 198.

107.    The City admits the allegations contained in Paragraph 199.

108.    The City denies the allegations contained in Paragraphs 200 and 201.

109.    The City denies the allegations contained in Paragraph 202.

110.    Answering Paragraph 203, the City admits that Councilmember

Graham shared his perspective that the Warming Center had not violated the

express nine conditions of the CUP.  The City admits that Paragraph 203 correctly,

but selectively, quotes statements made by Councilmember Graham.  The City

denies the remaining allegations contained in Paragraph 203.

111.    Answering Paragraph 204, the City admits that Councilmember

Graham stated "I've put together nine findings of fact" and proceeded to explain

proposed fact findings for City Council's consideration and voting.  The City

denies the remaining allegations of Paragraph 204, which do not accurately

describe the findings of fact proposed and adopted by City Council.  The City

denies the remaining allegations contained in Paragraph 204.

112.    The City admits the allegations contained in Paragraphs 205.

113.   Answering Paragraph 206, the City admits Councilmember Gabriel voted to revoke the CUP.  The City further admits the video of the September 16, 2024 City Council meeting speaks for itself and shows the full comments made by Councilmember Gabriel. The City admits Paragraph 206 accurately quotes a portion of a single sentence made by Councilmember Gabriel in the course of a much longer explanation of her decision making.  As such, the City denies the allegations of Paragraph 206, which inaccurately portray Councilmember Gabriel's explanation.

114.   The City denies the allegations contained in Paragraphs 207 and 208.

115.   The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 209 and therefore denies the same.

116.   The City admits the allegations contained in Paragraph 210.

117.   The City denies the allegations contained in Paragraphs 211and 212.

118.   Answering Paragraph 213, the City admits Resolution 6227 contains sixteen "Whereas" clauses, of which eleven contain the City Council's findings. The City denies the remaining allegations contained in Paragraph 213.

119.   Answering Paragraph 214, the City admits Resolution 6227 speaks for itself.  The City further admits the "Whereas" clauses include findings that the Warming Center provided information and representations in its CUP application process which were incorrect and/or untrue.  The City admits that Paragraph 214

accurately quotes some of the findings contained in Resolution 6227.  The City

denies the remaining allegations contained in Paragraph 214.

120.   The City denies the allegations contained in Paragraphs 215 through

217.

121.   Answering Paragraph 218, the City admits that some public comments

during the September 16, 2024 City Council meeting supported recission.

122.   The City denies the allegations contained in Paragraphs 219 through

221.

123.   Answering Paragraph 222, the City admits unsworn public comments

discussed unidentified guests of the Warming Center relieving themselves in

public rather than in appropriate restroom facilities.  The City denies the remaining

allegations contained in Paragraph 222.

124.   The City is currently without sufficient information to either admit or

deny the allegations contained in Paragraph 223 and therefore denies the same.

125.   Answering Paragraph 224, the City denies the allegation there was

only one instance where a Warming Center guest was found to have engaged in an

aggressive manner.  The City is currently without sufficient information to either

admit or deny the remaining allegations contained in Paragraph 224 and therefore

denies the same.

126.    The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 225 through 227 and therefore denies the same.

127.    The City denies the allegations contained in Paragraphs 228 and 229.

128.    Answering Paragraph 230, the City admits that it identified four types of police calls that are commonly associated with homeless individuals: trespass, disorderly conduct, welfare check and criminal mischief.  The City denies the remaining allegations contained in Paragraph 230.

129.    The City denies the allegations contained in Paragraph 231.

130.    The City admits the allegations contained in Paragraphs 232 and 233.

131.    The City denies the allegations contained in Paragraphs 234 and 235.

132.    The City admits the allegations contained in Paragraph 236.

133.    Answering Paragraph 237, the City admits the population of Kalispell has increased.  The City is currently without sufficient information to either admit or deny the extent of population growth as alleged.  The City denies that the increase in calls, particularly in the vicinity of the Warming Center during the months of overnight operation, can be explained by the population growth.

134.    The City denies the allegations contained in Paragraph 238.

135.   Answering Paragraph 239, the City admits the Samaritan House has a CUP to operate a homeless shelter.  The City denies the remaining allegations contained in Paragraph 239.

136.   The City admits the allegations contained in Paragraphs 240 through 243.  The City affirmatively alleges that Paragraphs 240 through 243 do not address the significant increase in calls during the Warming Center's overnight shelter operations, as shown by the data and found by Resolution 6227.

137.   The City denies the allegations contained in Paragraph 244.

138.   The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 245 and therefore denies the same

139.   Answering Paragraph 246, the City admits 38.15 percent of the increase in calls were identified as originating in the half mile around Depot Park and 34.39 percent of the increase in calls were identified as originating in the half mile around the Library.  The City denies the remaining allegations contained in Paragraph 246.  The City further states Paragraph 246 does not address the significant increase in calls during the Warming Center's overnight shelter operations, as shown by the data and found by Resolution 6227.

140.   Answering Paragraph 247, the City admits 19.4 percent of the increase in calls were identified as originating in the half mile around the Warming Center.  The City denies the remaining allegations contained in Paragraph 247.

141.   The City denies the allegations contained in Paragraphs 248 and 249.

142.   Answering Paragraph 250, the City admits the police call data does not specifically identify calls that stem from behavior of homeless individuals versus other community members.  The City denies any allegation or inference that the police call data cannot be used as evidence, circumstantial or otherwise, of the behavior of homeless individuals, particularly when analyzed based on the type of crime, location, and the increase in calls during the Warming Center's overnight shelter operations.

143.   The City denies the allegations contained in Paragraph 251.

144.   The City admits the allegations contained in Paragraph 252.

145.   The City admits the first sentence of Paragraph 253.  The City denies the second sentence of Paragraph 253.

146.   The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 254 and therefore denies the same.

147.   The City admits the allegations contained in Paragraphs 255 through 258.

148.   Answering Paragraph 259, the City admits that there are two other homeless shelters in Kalispell – Samaritan House and Ray of Hope. The City denies the remaining allegations contained in Paragraph 259.

149.   The City admits the allegations contained in Paragraph 260.

150.   Answering Paragraph 261, the City admits that City Council has not raised the topic of revoking the Samaritan House's CUP. The City denies the remaining allegations contained in Paragraph 261.

151.   The City denies the allegations contained in Paragraph 262.

152.   Answering Paragraph 263 of the Verified Complaint, the City admits that City Council has not raised the topic of revoking A Ray of Hope's CUP. The City denies the remaining allegations contained in Paragraph 263 of the Verified Complaint.

153.   The City admits the allegations contained in Paragraph 264.

154.   The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 265 and therefore denies the same.

155.   Answering Paragraph 266, the City admits that the former Outlaw Inn is vacant and not in use. The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 266 and therefore denies the same.

156.   The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 267 and therefore denies the same.

157.   The City admits the allegations contained in Paragraph 268.

158.   The City denies the allegations contained in Paragraph 269.

159.   The City admits the allegations contained in Paragraph 270.

160.    The City denies the allegations contained in Paragraphs 271 through 273.

161.    Answering Paragraph 274, the City denies the allegation that it sought to revoke the Warming Center's CUP.  The City admits that, after complaints were raised, City Council sought to review the Warming Center's CUP, and following an investigation and notice and opportunity to be heard, City Council decided to rescind the CUP.  The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 274 and therefore denies the same.

162.    The City denies the allegations contained in Paragraph 275.

163.    The City admits the allegations contained in Paragraphs 276 and 277.

164.    The City denies the allegations contained in Paragraphs 278 and 279.

165.    The City admits the allegations contained in Paragraphs 280.

166.    The City denies the allegations contained in Paragraphs 281.

167.    The City admits the allegations contained in Paragraph 282.

168.    The City denies the allegations contained in Paragraphs 283 and 284.

169.    The City admits the allegations contained in Paragraphs 285 and 286.

170.    Answering Paragraph 287, the City admits that the Planning Department staff, Planning Board and Zoning Commission, and City Council, in reliance on the representations and information by the Warming Center, found that

the Warming Center satisfied all the "review criteria" under § 27.33.080, including the specific sub-criteria under subsection (2)(d) about neighborhood impacts.  The City denies the remaining allegations contained in Paragraph 287.

171.   The City denies the allegations contained in Paragraphs 288 through 290.

172.   Answering Paragraph 291, the City denies the Warming Center's day services such as laundry and showers ended.  The City admits that without a CUP, the Warming Center cannot shelter the homeless at 889 North Meridian.  The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 291 and therefore denies the same.

173.   The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 292 and 293 and therefore denies the same.

174.   The City denies the allegations contained in Paragraph 294.

175.   The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 295 through 300 and therefore denies the same.

176.   The City denies the allegations contained in Paragraph 301.

177.   Answering Paragraph 302, the City denies that allegation the broader community is harmed by the rescission.  The City is currently without sufficient

information to either admit or deny the remaining allegations contained in Paragraph 302 and therefore denies the same.

178.   The City is currently without sufficient information to either admit or deny the allegations contained in Paragraph 303 and therefore denies the same.

179.   Answering Paragraph 304, the City denies the allegation it followed through on its threats to revoke.  The City is currently without sufficient information to either admit or deny the remaining allegations contained in Paragraph 304 and therefore denies the same.

180.   The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 305 through 310 and therefore denies the same.

181.   The City denies the allegations contained in Paragraphs 311 and 312.

182.   The City is currently without sufficient information to either admit or deny the allegations contained in Paragraphs 313 through 326.

## Claim I
## Fourteenth Amendment Procedural Due Process

183.   Answering Paragraph 327, the City re-pleads the information in the paragraphs above as though fully set forth herein.

184.   The City denies the allegations contained in Paragraphs 328 through 337.

**Claim II**
**Fourteenth Amendment Equal Protection**

185.   Answering Paragraph 338, the City re-pleads the information in the paragraphs above as though fully set forth herein.

186.   The allegations contained in Paragraph 339 are statements of law to which no response is required. To the extent a response is required, the City denies that the Paragraph contains an accurate and/or complete statement of the law.

187.   The City denies the allegations contained in Paragraphs 340 through 343.

**Claim III**
**Fourteenth Amendment Substantive Due Process**

188.   Answering Paragraph 344, the City re-pleads the information in the paragraphs above as though fully set forth herein.

189.   The City denies the allegations contained in Paragraphs 345 through 349.

**Claim IV**
**U.S. Constitution Article I, Section 10 Bills of Attainder**

190.   Answering Paragraph 350, the City re-pleads the information in the paragraphs above as though fully set forth herein.

191.   The allegations contained in Paragraphs 351 and 352 are statements of law to which no response is required. To the extent a response is required, the City

denies that the Paragraphs contain an accurate and/or complete statement of the law.

192.   The City denies the allegations contained in Paragraph 353.

193.   The City admits the allegations contained in Paragraph 354.

194.   The City denies the allegations contained in Paragraph 355 through 360.

## Claim V
## Montana Constitution Individual Dignity Clause

195.   Answering Paragraph 361, the City re-pleads the information in the paragraphs above as though fully set forth herein.

196.   The allegations contained in Paragraph 362 are statements of law to which no response is required. To the extent a response is required, the City denies that the Paragraph contains an accurate and/or complete statement of the law.

197.   The City denies the allegations contained in Paragraphs 363 through 365.

## Claim VI
## Montana Constitution Fundamental Inalienable Rights

198.   Answering Paragraph 366, the City re-pleads the information in the paragraphs above as though fully set forth herein.

199.   The allegations contained in Paragraphs 367 and 368 are statements of law to which no response is required. To the extent a response is required, the City

denies that the Paragraph contains an accurate and/or complete statement of the law.

200.   The City denies the allegations contained in Paragraph 369.

201.   The City admits the allegations contained in Paragraph 370.

202.   Answering Paragraph 371, the City admits that for homeless individuals without a place to stay in the winter, the Warming Center may provide safety and health.

203.   The City denies the allegations contained in Paragraphs 372 through 374.

## Claim VII
## Montana Constitution Substantive Due Process

204.   Answering Paragraph 375, the City re-pleads the information in the paragraphs above as though fully set forth herein.

205.   The allegations contained in Paragraphs 376 through 378 are statements of law to which no response is required. To the extent a response is required, the City admits the allegations contain accurate, yet incomplete statements of the law.

206.   The City denies the allegations contained in Paragraphs 379 and 380.

## Claim VIII
## Fifth and Fourteenth Amendment Takings

207.   Answering Paragraph 381, the City re-pleads the information in the paragraphs above as though fully set forth herein.

208.   The City denies the allegations contained in Paragraphs 382 through 389.

## AFFIRMATIVE DEFENSES

1.   The Complaint fails to state a claim upon which relief can be granted.

2.   Plaintiff lacks standing.

3.   Plaintiff's claims are unripe.

4.   Plaintiff failed to exhaust their administrative remedies.

5.   Plaintiff has not sought judicial review of or appealed the City Council's decision.

6.   Plaintiff's claims and damages are subject to estoppel based on Plaintiff's signed CUP application, representations and actions.

7.   Plaintiff's claims are barred by the doctrine of unclean hands.

8.   Plaintiff has failed to mitigate its alleged damages.

9.   The City is not liable pursuant to the Public Duty Doctrine.

10.   Plaintiff's claims for damages are subject to the statutory caps set forth in Mont. Code Ann. § 2-9-108.

11.   The City is not liable because it acted under the authority of a law and/or duly promulgated Rule or Ordinance. *See* § 2-9-103, MCA.

12.     The City is immune from liability for legislative acts and omissions under § 2-9-111, MCA.

13.     The City is immune under Mont. Code Ann. § 2-9-114, MCA.

14.     Plaintiff cannot seek exemplary or punitive damages against the City per § 2-9-105, MCA.

15.     Any recovery herein should be reduced by any and all amounts received by Plaintiff from any collateral source, or that were otherwise offset.

16.     Plaintiff voluntarily assumed the risk of events, occurrences and damages alleged in the Verified Complaint so that any damages recoverable are either precluded or diminished.

## APPLICABILITY OF AFFIRMATIVE DEFENSES

At this time this time, the City is uncertain what affirmative defenses may apply if this case goes to trial.  The foregoing affirmative defenses are pleaded to preserve all defenses available to the City.  Discovery, trial preparation and the facts of this case may make some affirmative defenses applicable and thus they are raised in this Answer to avoid being waived.  Any affirmative defenses that do not appear to be reasonably supported by the facts and/or law will be dismissed.  The purpose of raising these affirmative defenses is not to create defenses where none exist.  Instead, it is recognition that the pleadings, discovery and trial preparation require an examination and evaluation of evolving facts and law.  The decision

maker, whether judge or jury, should have available for consideration all defenses that may apply.  The City further reserves the right to amend this answer, if in the course of discovery, further defenses become apparent under the facts and circumstances of this case.

Wherefore, the City prays as follows:

1.      That Plaintiff's Complaint be dismissed with prejudice and that the City be awarded its costs and disbursements expended herein;

2.      That the Court grant the relief prayed for by the City and deny the relief prayed for by Plaintiff.

3.      For costs and attorney fees; and

4.      For such other and further relief as the Court may deem proper under the circumstances.

## **JURY DEMAND**

Defendant demands a trial by jury on all issues so triable.

Dated this 5th day of November, 2024.

HAMMER, QUINN & SHAW PLLC


/s/ Marcel A. Quinn
Marcel A. Quinn
Todd A. Hammer
Seth H. Rogers
*Attorneys for Defendant City of Kalispell*