Todd A. Hammer
Marcel A. Quinn
Seth H. Rogers
HAMMER, QUINN & SHAW PLLC
100 Financial Drive, Suite 100
P.O. Box 7310
Kalispell, MT 59904-0310
Telephone:  (406) 755-2225
Facsimile:  (406) 755-5155
Email:      toddhammer@attorneysmontana.com
            marcelquinn@attorneysmontana.com
            sethrogers@attorneysmontana.com

*Attorneys for Defendant City of Kalispell*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| **FLATHEAD WARMING CENTER**,<br><br>          Plaintiff,<br><br>v.<br><br>**CITY OF KALISPELL,**<br><br>          Defendant. | Case No:  CV 24-141-M-DLC<br><br>**DEFENDANT'S PRELIMINARY PRETRIAL STATEMENT** |

    In accordance with the Court's Preliminary Pretrial Order (Doc. 34) and

Local Rule 16.2(b)(1), Defendant City of Kalispell ("City") hereby submits its

Preliminary Pretrial Statement as follows:

## FACTUAL OUTLINE OF CASE

The Flathead Warming Center ("WC") is a non-profit organization which operates a homeless shelter in Kalispell, Montana under a Conditional Use Permit ("CUP") issued by the City.

Plaintiff's Application for the CUP was submitted with an express acknowledgment:

> Should any information or representation in connection with this application be incorrect or untrue, I understand any approval based thereon may be rescinded, and other appropriate action taken.

Within the Application, WC described its future operations, including measures to be taken to mitigate the impact on the surrounding neighborhood.  WC acknowledged: "It is my responsibility to ensure the shelter is a good neighbor." In its application, statements to the Planning Board and statements to City Council, the WC emphasized it will take measures to be a "good neighbor" and be responsive to concerns from the neighborhood.  WC advised that based on its prior experience, its operations did not contribute to trash / defecation in the neighborhood, cause increased crime, or create safety concerns with neighbors, among other things.

City Code delineates the grant of a CUP is a matter of grace, resting in the discretion of City Council.  It states:

> The granting of the Conditional Use Permit is a matter of grace, resting in the discretion of the City Council and a refusal is not

the denial of a right, conditional or otherwise.

City Code § 27.33.090.

Under Kalispell Code, no CUP may be issued unless certain review criteria are satisfied, including:

- The proposed use will not be detrimental to abutting properties in particular and the neighborhood in general. § 27.33.080 (1) (d).

- The proposed use will not cause or contribute to a decline in property values of adjacent properties. § 27.33.080 (1) (f).

- The proposed conditional use will have no more adverse effect on the health, safety, or comfort of persons living or working in the area and will be no more injurious, economically or otherwise, to property or improvements in the surrounding area than would any generally permitted in the district. § 27.33.080 (1).

Relying on the information and representations submitted by the WC, City Council approved the CUP.

In 2024, public concerns were raised regarding the significant negative effects the WC was having on neighboring residents and business owners. City Council decided to have a work session to discuss the public concerns and consider whether rescission of the WC's CUP was appropriate.

The WC was notified of and invited to attend the work sessions held May 13 and May 28, 2024. Among the information considered by Council was police data showing a significant increase in crime in the neighborhood surrounding the WC during the months it offered overnight accommodations.

By letter dated May 31, 2024, the WC was provided notice of nine specific concerns regarding perceived differences between the representations WC presented to Council to secure the CUP and what transpired in the neighborhood since the WC opened, including:

- increase in homelessness
- increase in loitering
- lack of responsiveness or accountability to neighbors
- increased law enforcement calls
- service of communities beyond Kalispell
- lack of being a good neighbor and
- lack of transportation for patrons.

The WC was invited to provide public comment at a hearing and was advised City Council may consider whether to rescind or take other appropriate action on its CUP.

City Council held a hearing on July 15, 2024, at which time the WC presented comment, information and documents addressing the issues being considered. WC was provided with an opportunity to be heard, and was heard, on all issues.

At the following July 16, 2024 meeting, City Council postponed action to allow the WC to work with the neighborhood to address concerns. During the process, WC circulated an August 22, 2024 letter disclaiming responsibility for guest behavior beyond its property boundaries. The letter stated, in part:

Based on the conversations so far, there appears to be a strong expectation that the FWC will take responsibility for things that occur

off our property and beyond our control: transportation, cleaning up garbage, policing bad behavior, patrolling public parks, etc. We agree that there can be problems associated with these issues.  And we want to work with the appropriate authorities to address them as best we can within our role as private citizens.  To the extent the next round of discussion seeks our input on how the proper authorities can address problems that belong to the whole community, we are eager to do that. But, to the extent discussion will focus on what the FWC needs to do off its property to control the behavior of other private citizens, we can't agree to take on that kind of responsibility.

The mediator, Mark Flatau, advised neighbors the WC was "not in a position to present any possible solutions at this time."

With WC having been provided ample notice and an opportunity to be heard, and City Council having received substantial evidence and comment on the issues, City Council rescinded the CUP at its September 16, 2024 meeting.

Resolution No. 6227 outlines the factual basis for rescission, to include:

WHEREAS,    the Kalispell City Council finds that during the application process, the Warming Center submitted a letter to the Kalispell Planning Board that included incorrect or untrue statements upon which Council relied in granting approval of a zoning text amendment and the Conditional Use Permit; and

WHEREAS,    the Kalispell City Council finds that during the application process, the Warming Center submitted a letter to the Kalispell City Council that included incorrect or untrue statements upon which Council relied in granting approval of a zoning text amendment and the Conditional Use Permit; and

WHEREAS,    the Kalispell City Council finds that the application for the Conditional Use Permit signed by Tonya Horn, the Executive Director of the Warming Center, on September 4, 2020 stated, "I hereby certify under penalty of perjury and the laws of the  State of Montana that the information submitted herein, on all other

submitted forms, documents, plans or any other information submitted as a part of this application, to be true, complete, and accurate to the best of my knowledge.   Should any information or representation submitted in connection with this application be incorrect or untrue, I understand that any approval based thereon may be rescinded, and other appropriate action taken."; and

WHEREAS,        the Kalispell City Council finds that Kalispell Police Department call data establishes that the Warming Center's homeless shelter use has created a negative adverse effect on the surrounding neighborhood that exists during the homeless shelter's operating months of October through April and that the adverse effect decreases during the months of May through September when the homeless shelter is not operating; and

WHEREAS,        the Kalispell City Council finds that statements from the Warming Center that it will not take responsibility for things that occur off of the property and beyond its control contradict information provided by the Wanning Center in its application for the Conditional Use Permit and its letters to the City Council and the Planning Board; and

WHEREAS,        the Kalispell City Council finds that public comments from all meetings held by the City Council on the Warming Center 's Conditional Use Permit establish that the Warming Center's homeless shelter use has created a negative adverse effect on the surrounding neighborhood; and

WHEREAS,        the Kalispell City Council finds that statements by the  Warming Center regarding its lack of responsibility for effects on areas beyond its property or within 150 feet of its property contradict statements in its application for the Conditional Use  Permit  and its letters to the Planning Board and the City  Council all of which City Council relied upon in granting approval of a zoning text amendment and the Conditional Use Permit;  and

WHEREAS,        the Kalispell City Council finds that the Kalispell Chamber of Commerce,  the Kalispell Downtown Association,  and  the Kalispell Business Improvement District recommended that the City  Council "[i]ncrease police presence in the service  triangle

around the Warming Center, Fairgrounds, and Gateway Mall during the busy seasons. In particular, at 6pm and 8am when people are preparing to enter and exit the Warming Center (Winter/Spring)." This recommendation demonstrates that the Warming Center's homeless shelter use has created a negative adverse effect on the surrounding neighborhood; and

WHEREAS, the Kalispell City Council find that information and representations submitted in connection with the Warming Center's application for the Conditional Use Permit is incorrect or untrue; and

WHEREAS, the Kalispell City Council finds that the Warming Center's homeless shelter use has created a negative adverse effect on the surrounding neighborhood; and

WHEREAS, the Kalispell City Council therefore finds that rescinding the Warming Center 's Conditional Use Permit is in the best interests of the City and deems the passage of this resolution as necessary to protect the public health, safety, and welfare.

The City's findings are substantiated by the record and public comment.

## JURISDICTION AND VENUE

The Court has federal-question jurisdiction, 28 U.S.C. § 1331, civil-rights jurisdiction, 28 U.S.C. § 1343, and supplemental jurisdiction over the state constitutional claims, 28 U.S.C. § 1367. Venue is also proper.

## FACTUAL BASES AND LEGAL THEORIES OF DEFENSES

The City contends as follows:

**1. General Response to Allegations.**

The City denies the claims presented by the WC, and stands by its actions in issuing Resolution No. 6227. The WC provided information and representations

throughout its CUP Application process about its future operations.  The City reasonably relied on that information in assessing whether a CUP should be granted under City Code, including to determine if the operations would have an adverse impact to the neighborhood.  The information given by the WC was false, inaccurate, and not reflective of WC's actual operations and impact to the community.  Accordingly, rescission was appropriate pursuant to the following Application language:

> Should any information or representation in connection with this application be incorrect or untrue, I understand any approval based thereon may be rescinded, and other appropriate action taken.

Contrary to the representations in the CUP Application and the City Code provisions upon which the CUP issued, the WC's operations had a significant detrimental impact to abutting properties in particular and the neighborhood in general.  The City issued the CUP to the WC based on false information or a mistaken representation and belief regarding the WC's  operations and its lack of impact on the neighborhood. There also proved to be a substantial failure of consideration as promised by the WC.  § 28-2-1711, MCA.

Pursuant to the Montana Constitution, "the powers of incorporated cities… shall be liberally construed." Montana Constitution, Article XI, Section 4.  City Council has broad powers.

> The city or town council has power to make and pass all bylaws, ordinances, orders, and resolutions not repugnant to the constitution of

the United States or of the state of Montana or to the provisions of this title, necessary for the government and management of the affairs of a city or town, for the execution of the powers vested in the body corporate, and for carrying into effect the provisions of this title.

§ 7-5-4101 MCA. "For the purpose of promoting health, safety, morals, or the general welfare of the community" City Council is "empowered to regulate and restrict …. the … use of buildings, structures and land…" § 76-2-301 MCA.

The WC's Application acknowledged and agreed, "Should any information or representation submitted in connection with this application be incorrect or untrue, I understand any approval based thereon may be rescinded, and other appropriate action taken." Under Kalispell City Code, "Failure to comply with the terms and/or conditions of a Conditional Use Permit is a violation of the Zoning Ordinance..." City Code § 27.33.050. Further, City Council has the authority to take "any appropriate action or proceedings" to address violations of zoning regulations. City Code § 27.36.020; § 76-2-308 MCA.

The WC has not brought an action for judicial review for the Court to re-analyze the evidence, merits or legal authority for the City's rescission of the CUP. Rather, the WC only alleges Constitutional violations.

The WC lacks a protected property interest in the CUP as required for its procedural and substantive due process claims. *See Powell Cty. v. Country Vill., LLC*, 2009 MT 294, ¶ 25, 352 Mont. 291, 217 P.3d 508; *Beasley v. Flathead Cty.*, 2009 MT 121, ¶ 15, 350 Mont. 177, 206 P.3d 915; *see also Whitefish 57 Commer.,*

*LLC v. City of Whitefish*, 2023 MT 176, ¶ 14, 413 Mont. 349, 536 P.3d 395; *IRWS, LLC v. Elmore Cnty*., 2023 U.S. Dist. LEXIS 228741, 9-10 (2023).

Even if the Constitutional right to procedural due process was applicable, the WC was afforded due process in accordance with the State and Federal Constitution.  WC was given sufficient notice and the opportunity to be heard and was heard on the issues which led to rescission. *See also Legacy Invs., LLC v. Norfolk City Council*, 110 Va. Cir. 392, 404-06 (Cir. Ct. 2022)*; IRWS* at \*17-18*; see also Dayalji v. City of Compton* No. 97-56369, 1999 U.S. App. LEXIS 4083, at \*4 (9th Cir. Mar. 11, 1999); *Oneida Seven Generations Corp. v. City of Green Bay*, 2017 U.S. Dist. LEXIS 86509, at \*2 (E.D. Wis. June 6, 2017). Furthermore, City Council members were not biased. They did not have any pecuniary or personal interest in the outcome of the proceedings.  *Killgore v. City of S. El Monte*, 860 F. App'x 521, 522 (9th Cir. 2021)

Even if the right to substantive due process applies, the City Council decision was based on multiple legitimate governmental interests.  *Peak Oil Holdings LLC v. Cty. of Ventura* No., 2023 U.S. Dist. LEXIS 222231, at \*3. (C.D. Cal. Dec. 13, 2023).  The City Council rationally furthered its legitimate government interest through rescinding the CUP, including by eliminating a negative adverse effect the WC operations caused to the surrounding

neighborhood, among other things. *Id.; Killgore*, 2019 U.S. Dist. LEXIS 228157, at *24-26; *Oneida*, 2017 U.S. Dist. LEXIS 86509 at *17.

The City also did not violate any right to equal protection. WC was not intentionally treated differently from others similarly situated. Council heard substantial public concern regarding adverse effects the WC had on the surrounding neighborhood during periods in which overnight stays occurred, as supported by law enforcement records. The WC was granted a CUP based on representations regarding how the WC would operate. Those representations were determined to be untrue and/or were not provided as proper consideration for the granting of the CUP. Also, WC submits no evidence to demonstrate similar circumstances of any other homeless shelters or PUDs. To the extent the WC was treated differently than other CUPs, there was a rationale basis for the difference in treatment. *Akshar Glob. Invs. Corp. v. City of L.A.*, 817 F. App'x 301, 304-05 (9th Cir. 2020); *Killgore*, 2019 U.S. Dist. LEXIS 228157, at *26-27.

Further, Resolution 6227 is not an unconstitutional Bill of Attainder. The Resolution does not fall within the historical meaning of legislative punishment. Rather, it serves nonpunitive purposes, including protecting the WC's surrounding neighborhood from the adverse effects of the WC's operations which the WC assured the City would not exist. *See Fowler Packing Co. v. Lanier*, 844 F.3d 809,

817-19 (9th Cir. 2016); *Litton Int'l Dev. Corp. v. Simi Valley,* 616 F. Supp. 275, 294-95 (change in land use is not a Bill of Attainder).

The Montana human dignity clause of Article II, Section 4, does not provide an independent cause of action. *Smith v. State*, 2010 Mont. Dist. LEXIS 12, *12; *Peschel v. City of Missoula*, 664 F. Supp. 2d 1149, 1162 (D. Mont. 2009). Further, the clause pertains to the rights of individuals, not the WC. Moreover, the City did not discriminate against WC on the basis of social origin or condition or equal protection. Rather, the CUP was rescinded for the reasons discussed above related to the manner in which the WC engaged in its business operations, including its adverse impacts on the neighboring properties.

The Montana Constitution's inalienable rights specified by Article II § 3 are limited by the State's police power which includes the City's power to promote the public health and welfare and regulate and restrict the use of buildings. Montana Constitution, Article XI, Section 4; § 7-5-4101 MCA; *Montanans Against Irresponsible Densification, LLC v. State*, 2024 MT 200, ¶ 17, 418 Mont. 78, 555 P.3d 759. No inalienable rights of the WC, if any, were violated.

The WC does not have an entitlement to a CUP, as necessary for a takings claim. *Rainbow Springs Golf Co. v. Town of Mukwonago*, 2005 WI App 163, ¶11, 284 Wis. 2d 519, 525, 702 N.W.2d 40, 43. When a City acts to abate a public nuisance, the Takings Clause is not implicated. *Patel v. City of L.A.* No. CV 24-

493 PA(PDx), 2024 U.S. Dist. LEXIS 63265, at *24 (C.D. Cal. Apr. 4, 2024). Further, rescission of a CUP does not amount to a taking where, as here, the WC is allowed to operate other forms of business on the premises and the property retains value. *Killgore v. City of S. El Monte* No. 2:19-cv-00442-SVW-JEM (C.D. Cal. Apr. 24, 2020), 2020 U.S. Dist. LEXIS 133110, at *16.  Land-use regulation is not a compensable taking if it does not deprive the property of all reasonable use. *Town of Denmark v. Suburban Towing, Inc.* No. A09-947(Mar. 30, 2010), 2010 Minn. App. Unpub. LEXIS 256, at *10.

### 2.    Plaintiff Has Failed to State a Claim for Which Relief Can Be Granted.

Basis:  Rule 12(b)(6), F.R.Civ.P. Plaintiff's Complaint fails to allege facts that, if true, would establish claims against the City.  *See e.g. Smith*, 2010 Mont. at *12; *Peschel*, 664 F. Supp. 2d at 1162.

### 3.    Plaintiff Lacks Standing.

Basis:  Plaintiff lacks standing to pursue the claims asserted, including to pursue causes of action and/or damages of its guests.  *Lewis v. Casey*, 518 U.S. 343, 347, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012).

### 4.    Plaintiff's Claims are Unripe.

Basis:  Plaintiff's Claims are Unripe because Plaintiff failed to exhaust administrative remedies or pursue judicial review of City Council's decision.

*Safer Chems. v. United States EPA*, 943 F.3d 397, 411 (9th Cir. 2019).

### 5.    Plaintiff Failed to Exhaust Its Administrative Remedies.

<u>Basis</u>: Plaintiff did not appeal the rescission of the CUP to the City Manager or City Council.  Plaintiff did not seek judicial review of City Council's decision. It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938), *accord Pac. Legal Found. v. Watt*, 529 F. Supp. 982, 995 (D. Mont. 1981); *Safer Chems. v. United States EPA*, 943 F.3d 397, 411 (9th Cir. 2019). Failure to exhaust administrative remedies is grounds for dismissal. *Christison v. Alvarez*, 31 F. Supp. 2d 787, 792 (D. Mont. 1999).

Plaintiff did not bring any claim to the Montana Human Rights Commission for alleged violation of the individual dignity clause. *Dupuis v. Bd. of Trs.*, 2006 MT 3, ¶ 18, 330 Mont. 232, 128 P.3d 1010.

### 6.    Plaintiff has not Sought Judicial Review of or Appealed the City Council's Decision.

<u>Basis:</u> Plaintiff did not seek judicial review of City Council's decision. *Whitefish 57 Commer., LLC v. City of Whitefish*, 2023 MT 176, 413 Mont. 349, 536 P.3d 395.  As such, the Court and jury are not permitted to reconsider the merits of the rescission decision.

**7.    Plaintiff's Claims and Damages are Subject to Estoppel Based on Plaintiff's Signed CUP Application, Representations and Actions.**

Basis:    Promissory estoppel consists of four elements: a clear and unambiguous promise, reliance by the promisee, reasonableness and foreseeability of the reliance, and resulting injury to the promisee. *S& Brake Supply, Inc. v. STEMCO LP*, 2016 MT 324, ¶ 44, 385 Mont. 488, 385 P.3d 567.

For equitable estoppel (1) there must be conduct, acts, language or silence amounting to a representation or a concealment of a material fact; (2) the facts must be known to the party to be estopped at the time of that party's conduct, or at least the circumstances must be such that knowledge of the facts is necessarily imputed to that party; (3) the truth must be unknown to the other party at the time the representation was acted upon; (4) the representation must be made with the intent or expectation that it will be acted on by the other party; (5) the representation must be relied upon by the other party, leading that party to act upon it; and (6) the other party must in fact rely on the representation so as to change its position for the worse. *MC, Inc. v. Cascade City-County Bd. of Health*, 2015 MT 52, ¶ 32, 378 Mont. 267, 343 P.3d 1208.

**8.    Plaintiff's Claims are Barred by the Doctrine of Unclean Hands.**

Basis: A person may not take advantage of the person's own wrong.  § 1-3-208 MCA.  The WC's CUP was rescinded, in part, because the WC operated the WC in a manner inconsistent with the representations and information submitted to

the City to secure the CUP.

### 9.    Plaintiff Has Failed to Mitigate Its Alleged Damages.

Basis: An injured party has a duty to mitigate their damages. *McPherson v. Kerr*, 636 P.2d 852, 855 (Mont. 1981). The duty to mitigate assesses what could have been avoided based on what an ordinary prudent person could be expected to do if capable under the circumstances. *State v. Kalal*, 204 P.3d 1240, 1241 (Mont. 2009). If a party seeks attorney fees as a component of relief, they fail to mitigate damages to the extent they incur unreasonable attorney fees.

### 10.    The City is not Liable Pursuant to the Public Duty Doctrine.

Basis:  Depending on discovery, WC's claims and damages may be barred by the public duty doctrine. The public duty doctrine expresses the policy that the Kalispell Police Department officers' duty to protect and preserve the peace is owed to the public at large, not to individual members of the public, such as WC guests. *Gatlin-Johnson v. City of Miles City,* 2012 MT 302, ¶ 15, 367 Mont. 414, 291 P.3d 1129.

### 11.    Plaintiff's Claims for Damages are Subject to the Statutory Caps Set Forth in Mont. Code Ann. § 2-9-108.

Basis: Under § 2-9-108, MCA, the City is not liable in tort action for damages in excess of $750,000 for each claim and $1.5 million for each occurrence.

### 12.    The City is not Liable Because it Acted Under the Authority of a Law and/or Promulgated Rule or Ordinance. *See* **§2-9-103,**

**MCA.**

<u>Basis:</u>  Under § 2-9-103, MCA, a governmental entity is not civilly liable for actions taken in good faith, without malice or corruption, under the authority of an invalid law or a duly promulgated rule or ordinance if such liability would not attach had the law, rule, or ordinance been valid. The City acted in good faith, without malice or corruption, under the authority of laws, rules, and ordinances.

### 13.    The City is Immune from Liability for Legislative Acts and Omissions Under § 2-9-111, MCA.

<u>Basis:</u>  Rescission of the CUP was a quasi-judicial act.  If the Court were to find it to be a legislative act, the City reserves the right to rely on § 2-9-111, MCA, which provides a governmental entity is immune from suit for a legislative act or omission by its legislative body.

### 14.    The City is Immune under Mont. Code Ann. §2-9-114, MCA

<u>Basis:</u>  Rescission of the CUP was a quasi-judicial act.  If the Court were to find it to be a legislative act, the City reserves the right to rely on § 2-9-114, MCA, which provides a local governmental entity is immune from suit for damages arising from the lawful discharge of an official duty associated with vetoing or approving ordinances or other legislative acts or in calling sessions of the legislative body.

### 15.    Plaintiff Cannot Seek Exemplary or Punitive Damages Against the City per §2-9-105, MCA

Basis:  Under § 2-9-105, MCA, the state and other governmental entities are immune from exemplary and punitive damages.

**16.    Plaintiff Voluntarily Assumed the Risk of Events, Occurrences and Damages Alleged in the Verified Complaint so that any Damages Recoverable are either Precluded or Diminished.**

Basis:  WC agrees, "Should any information or representation in connection with this application be incorrect or untrue, I understand any approval based thereon may be rescinded, and other appropriate action taken."  WC assumed the risk  the CUP may be rescinded. *Patterson Enters. v. Johnson*, 2012 MT 43, ¶ 23, 364 Mont. 197, 272 P.3d 93.

## COMPUTATION OF DAMAGES

The City is not seeking recovery of compensatory damages against Plaintiff, although it reserves the right to pursue costs and/or attorney's fees from Plaintiff.

## PROPOSED STIPULATION OF LAW OR FACT

None beyond those stated within the parties Statement of Stipulated Facts.

## PROPOSED DEADLINE FOR ADDING PARTIES AND AMENDING PLEADINGS

The City respectfully suggests February 14, 2025, as an appropriate deadline for adding parties or amending pleadings.

## CONTROLLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION

1.    Whether the WC has a vested property interest in the CUP.

2.      Whether Article II, Section 4 of the Montana Constitution provides a private cause of action for alleged violations of the individual dignity clause.

3.      Whether the WC has standing to seek alleged constitutional violation of its guests.

4.      Whether WC's claims are subject to summary judgment in favor of the City, based on the law or undisputed material facts.

## PEOPLE WITH KNOWLEDGE OR INFORMATION

Those people are currently believed to have material knowledge or information include the following:

1.      Flathead Warming Center Board of Directors to include Luke Heffernan, Tonya Horn, Darrin Andrews, Haley Barrile, and Jane Emmert c/o David F. Knobel, Crowley Fleck PLLP, P.O. Box 2529, Billings, MT 59103-2529 (406)252-3441 and Jeff Rowes and Christen Hebert, Institute for Justice, 816 Congress Ave., Ste 970, Austin, TX 78701 (512)480-5936. The Board of Directors have knowledge regarding the allegations in the Complaint.

2.      Flathead Warming Center Board Members to include Nick Aemisegger, Bethany Johnson, Roger Nasset, Jeffrey Scogin and Steve Snipstead, c/o David F. Knobel, Crowley Fleck PLLP, P.O. Box 2529, Billings, MT 59103-2529 (406)252-3441 and Jeff Rowes and Christen Hebert, Institute for Justice, 816 Congress Ave., Ste 970, Austin, TX 78701 (512)480-5936. The Board Members

have knowledge regarding the allegations in the Complaint.

3. Flathead Warming Center employees and to include Raymond Young, Brittany Marie Sago, Alexander William Gambriel, and Jerome Anthony Amundson, c/o David F. Knobel, Crowley Fleck PLLP, P.O. Box 2529, Billings, MT 59103-2529 (406)252-3441 and Jeff Rowes and Christen Hebert, Institute for Justice, 816 Congress Ave., Ste 970, Austin, TX 78701 (512)480-5936. The employees have knowledge regarding the allegations in the Complaint.

4. Flathead Warming Center guests, whose identities will be determined.

5. Mayor and City Councilmember Mark Johnson c/o Hammer, Quinn & Shaw PLLC, P.O. Box 7310, Kalispell, Montana 59901 (406-755-2225). Mayor Johnson has knowledge regarding (a) the history, grounds, and reasons for the issuance of the CUP to the Warming Center, including what representations were made by the Warming Center to secure the CUP and how those representations were untrue; (b) the history, grounds and reasons for City Council's rescission of the CUP; (c) the process and procedures relied on by Council for the rescission; (d) the Warming Center being provided notice and an opportunity to be heard; (e) the City Council was neutral and unbiased; (f) the "WHEREAS" findings stated within Resolution No. 6227 and Council's basis for its findings; (g) the Council not singling out or treating the Warming Center differently than other CUPs; and (h) testimony to rebut allegations of the Warming Center as reflected in its complaint,

affidavits and motion for TRO.

6.    Kalispell City Councilmembers to include Sandy Carlson, Kari Gabriel, Chad Graham, Sam Nunnally, Mayor Mark Johnson, Jed Fischer, Sid Daud, Ryan Hunter and Jessica Dahlman, c/o Hammer, Quinn & Shaw PLLC, 100 Financial Dr Ste 100, Kalispell, MT 59901, 406-755-2225. The City Council members have knowledge or information regarding the City's conduct relating to the allegations in the Complaint, including regarding (a) the history, grounds, and reasons for the issuance to and rescission of the CUP held by the Warming Center; (b) the process and procedures relied upon by Council for rescission;  (c) notice and an opportunity to be heard provided to the Warming Center; (d) the neutrality and lack of bias of the Council in considering the evidence and not singling out and/or treating the Warming Center differently than other CUPs; (e) the passage of Resolution No. 6227, and the basis for the Council's findings; (f) Evidence from the public upon which the Council relied in passing the Resolution and making its findings; and (g) testimony and evidence to rebut allegations of the Warming Center as reflected in its complaint, affidavits and motion for TRO.

7.    Johnna Preble, c/o Hammer, Quinn & Shaw PLLC, 100 Financial Dr Ste 100, Kalispell, MT 59901, 406-755-2225. Ms. Preble is the City Attorney. She has knowledge or information regarding the City's conduct relating to the allegations in the Complaint.

8.      Doug Russell, c/o Hammer, Quinn & Shaw PLLC, 100 Financial Dr Ste 100, Kalispell, MT 59901, 406-755-2225. Mr. Russell is the City's Manager. He has knowledge or information regarding the City's conduct relating to the allegations in the Complaint.

9.      Jarod Nygren, c/o Hammer, Quinn & Shaw PLLC, 100 Financial Dr Ste 100, Kalispell, MT 59901, 406-755-2225. Mr. Nygren is the City's Development Services Director. He has knowledge and information related to the history of zoning in the area in question, the process and grounds for issuance of the CUP, and for the City Council's rescission of the same. He has knowledge about the Kalispell City Code provisions applicable to granting and rescinding the CUP. He also has knowledge about what the Warming Center is or is not allowed to do, given the rescission of the CUP.

10.     Chief of Police Jordan Venezio, c/o Hammer, Quinn & Shaw PLLC, 100 Financial Dr Ste 100, Kalispell, MT 59901, 406-755-2225. Chief Venezio has knowledge or information regarding the perspective of law enforcement that there is an adverse effect on the surrounding neighborhood that exists during the Warming Center's operating months of October through April. He also has knowledge and information on the police call information data submitted to the City Council.

11.     Law enforcement officers, to be determined, who interacted with the

Warming Center and/or its guests.

12.    The Vision Center employees, to include Terri Grace and Michelle Gravel, 580 North Meridian Road, Kalispell, Montana 59901 (406) 755-5910.  The Vision Center employees have knowledge or information as to their personal observations regarding the negative impact the Warming Center has had on the neighborhood and community, particularly during the Warming Center's operating months of October through April.

13.    Marshall Taylor, 670 5th Avenue West Noth, Kalispell, Montana 59901 (406) 882-5374. Mr. Taylor has knowledge or information as to his personal observations regarding the negative impact the Warming Center has had on the neighborhood and community, particularly during the Warming Center's operating months of October through April. He also has knowledge regarding the unsuccessful efforts to reach a resolution with the Warming Center on how to mitigate the adverse impacts of its operations on the neighborhood.

14.    Renee Dimler, 533 West Wyoming St., Kalispell, MT 59901 (406-212-5251). Ms. Dimler has knowledge or information as to her personal observations regarding the negative impact the Warming Center has had on the neighborhood and community, particularly during the Warming Center's operating months of October through April.

15.    Kindee R. Nelson, 220 Liberty Street, Kalispell, MT 59901 (406-799-

0042). Ms. Nelson has knowledge or information as to her personal observations regarding the negative impact the Warming Center has had on the neighborhood and community, particularly during the Warming Center's operating months of October through April. She also has knowledge regarding the unsuccessful efforts to reach a resolution with the Warming Center on how to mitigate the adverse impacts of its operations on the neighborhood.

16. Mark Flatau, Lorraine Clarno, and Frank Gardner have knowledge regarding the discussions between the neighbors and the Warming Center to attempt to resolve neighbor concerns before the CUP was rescinded.

17. All individuals who provided verbal or written comments to Kalispell City Council, as reflected in the publicly available written comments, meeting minutes, and video recordings of meetings.

18. Other witnesses identified by the Plaintiff.

19. Other witnesses as divulged during discovery.

## **DEFENSE AND INDEMNITY AGREEMENT**

Defense and indemnity concerning Plaintiff's claims against the City are being provided by the Montana Municipal Interlocal Authority ("MMIA") under the terms and conditions of its Memoranda of Coverage with the City of Kalispell. MMIA, an inter-governmental authority, is a group self-risk retention pool created under the authority of MCA §§ 2-9-211 and 7-11-101, *et seq.* The City of Kalispell

is a pool member in the risk protection program.    A copy of the applicable insurance agreement issued by Montana Municipal Interlocal Authority is available upon request for inspection and copying.

## PROSPECT FOR SETTLEMENT

The parties are currently exploring whether to engage in early mediation.

## SUITABILITY FOR SPECIAL PROCEDURES

No special procedures are known at this time.

Dated this 28th day of January, 2025.

HAMMER, QUINN & SHAW PLLC

/s/ Marcel A. Quinn
Marcel A. Quinn
Todd A. Hammer
Seth H. Rogers
*Attorneys for Defendant City of Kalispell*